Laura Sixkiller, SBN 022014
laura.sixkiller@gtlaw.com
Shalayne L. Pillar, SBN 034066
shalayne.pillar@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 800
Phoenix, AZ 85016
Tel: (602) 445-8000
Fax: (602) 445-8100

*Attorneys for Defendants/Counterclaimant*
*Lisa Frank, Inc. and Lisa Frank*

# UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glamour Dolls, Inc., <br><br>                    Plaintiff, <br><br> v. <br><br> Lisa Frank, Inc.; and Lisa Frank, in her individual and corporate capacity, <br><br>                    Defendants. | Case No. 4:21-CV-0228-TUC-SHR <br><br> **DEFENDANTS'/COUNTER-CLAIMANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **(Oral Argument Requested)** |
| Lisa Frank, Inc., <br><br>                    Counterclaimant, <br><br> vs. <br><br> Glamour Dolls, Inc., <br><br>                    Counterdefendant. | |

Plaintiff's claims are ripe for summary judgment. At the outset, there is no evidence that Defendants breached the parties' agreements; to the contrary, the evidence *disproves* Plaintiff's allegations of "breach." Neither can Plaintiff prove the elements of its other claims: Plaintiff cannot establish Defendants <u>intentionally deceived</u> Plaintiff; that Defendants <u>knew</u> the alleged misstatements were false; nor that Defendants <u>caused</u> the termination of Plaintiff's business expectancies—elements essential to Plaintiff's claims for fraud, defamation, and tortious interference. And there is no evidence that Lisa Frank in her personal capacity is liable, on any claim.

On the other hand, Plaintiff cannot dispute that it never paid a minimum royalty payment, plainly and unequivocally required by the contract. For these and many other reasons, Lisa Frank, Inc. ("**LFI**"), and Lisa Frank (collectively, "**Defendants**") request that the Court dismiss each of Plaintiff's claims and grant LFI summary judgment on its breach of contract claim for Plaintiff's failure to remit the minimum royalty. Defendants incorporate their contemporaneously filed Statement of Facts ("**SOF**") hereto.

## I. <u>PLAINTIFF CANNOT SUCCEED ON ANY CLAIM</u>.

Plaintiff asserts eight claims against Defendants. [*See generally*, Plf.'s First Amended Complaint (Doc. 28).] Defendants move jointly for the Court to enter judgment in their favor on each of these counts, even though Ms. Frank holds other reasons for her dismissal, at minimum. *See supra*, Section III.[1]

### A. <u>Plaintiff cannot establish breach of the Agreements (Count One)</u>.

This case—and in particular, Count One—is limited by the Court's prior ruling on Defendants' Motion to Dismiss. [*See* Aug. 4, 2022 Order (Doc. 41).] Therein, the Court dismissed three of the five breaches alleged by Plaintiff, and substantially limited two others, as summarized below:

---

[1] While Defendants strongly dispute Plaintiff's allegations against them, for purposes of this summary judgment motion only, Defendants may not be disputing each and every allegation as Plaintiff's claims fail as a matter of law irrespective of what it may allege occurred.

| Alleged Breach | Court's Ruling |
|---|---|
| "Completely failing" to provide artwork an eyeshadow palette, cosmetic bag, nail polish, brush roll, and eyeliners [Doc. 28 ¶ 78(a)] | Not dismissed [Doc. 41 at 26 ¶ 2] |
| Failing to timely review samples [Doc. 28 ¶ 78(b)] | Limited to June 2017 samples [*See* Doc. 41 at 8 ("Plaintiff does not allege Defendants failed to timely review any samples ***other than the June 2017 samples***; therefore, to the extent Plaintiff appears to be alleging Defendants violated [the Second Agreement], it has failed to allege facts supporting such a claim.") (emphasis added); Doc. 41 at 26 ¶ 2] |
| Failing to specify the reason for disapproving Plaintiff's samples [Doc. 28 ¶ 78(c)] | Limited to the June 2017 samples [*See* Doc. 41 at 9 ("Plaintiff does not allege LFI failed to specify reasons for disapproval of any samples ***other than the June 2017 samples***; therefore, to the extent Plaintiff appears to be alleging LFI violated [the Second Agreement], it has failed to allege facts supporting such a claim.") (emphasis added); *id.* at 26 ¶¶ 1, 2] |
| Refusing to accept samples for review [Doc. 28 ¶ 78(d)] | DISMISSED [Doc. 41 at 26 ¶ 1] |
| Seeking a more favorable license agreement with other companies before terminating the Second Agreement [Doc. 28 ¶ 78(e)] | DISMISSED [Doc. 41 at 26 ¶ 1] |
| Failing to provide written notice upon termination or an opportunity to cure any purported breach [Doc. 28 ¶ 78(f)] | DISMISSED [Doc. 41 at 26 ¶ 1] |

Discovery has now concluded, and it is evident that Plaintiff cannot establish the three remaining (and limited) theories of breach against either LFI or Ms. Frank, the latter of whom is not even a party to either the First or Second Agreement.[2] *See Idearc Media, Ltd. Liab. Co. v. Palmisano & Assocs., P.C.*, 929 F. Supp. 2d 939, 943 (D. Ariz. 2013) ("Plaintiff must prove the existence of a contract, breach of contract, and resulting damages.") (citation omitted).

### 1. There is no evidence Defendants failed to provide artwork under either Agreement.

Plaintiff claims Defendants "completely failed to provide artwork" for 14 products in violation of the First and Second Agreements. [SOF ¶ 35.] But Plaintiff admits LFI created

---

[2] This fact is not disputed. [SOF ¶¶ 5, 20.] For this reason alone, the breach of contract claim should be dismissed against Ms. Frank.

artwork for at least eight of the 14 products at issue. [SOF ¶¶ 36, 37.] Plaintiff also admits the remaining six products were not yet at the stage where LFI had to provide artwork. [SOF ¶¶ 38, 39.] And Plaintiff has not—and cannot—produce any evidence it paid *any* additional fee nor secured the requisite delivery schedule agreement to trigger LFI's obligation to create artwork, for those six items. [SOF ¶ 39.] Plaintiff's first "breach" theory is unsupported and fails.

### 2.  There is no evidence Defendants failed to timely review the June 2017 samples, per the First Agreement.

Plaintiff claims Defendants failed to timely review the June 2017 samples despite receiving "countless written notices" to trigger LFI's obligation. [SOF ¶ 40.] As narrowed by the Court's Order, the only samples at issue are those submitted in June 2017, which Plaintiff disclosed in discovery were a single "Travel Bronzer" sample and two "Single Eyeshadow" samples. [*Id.*] But the evidence indisputably shows LFI reviewed these samples. [SOF ¶ 41.] Separate and apart from this, the record is clear that contrary to Plaintiff's pleading, it never sent any contractual written notice to LFI, which it was obligated to do if LFI failed to review the June 2017 samples. [SOF ¶¶ 15, 42.] Plaintiff's second alleged "breach" is unsupported.

### 3.  There is no evidence Defendants failed to justify their disapproval of the June 2017 samples, per the First Agreement.

Last, Plaintiff claims Defendants failed to specify why they disapproved of the June 2017 samples. [SOF ¶ 43.] Again, the evidence does not support Plaintiff's claim. The only samples submitted in June 2017 to LFI were received by LFI on June 7, 2017. [SOF ¶ 44.] That same day, LFI emailed Plaintiff enumerating its reasons for not yet approving the samples. [*Id.*] Two days later, LFI provided further feedback. [SOF ¶ 45; *see also* SOF ¶ 46.] The First Agreement requires no more—nor can Plaintiff prove as much. Moreover, as established above, no contractual written notice was sent to LFI about an alleged failure to specify reasons for disapproval. [SOF ¶¶ 15, 42.] Under the undisputed evidence, Plaintiff's third "breach" fails, and Count One should be dismissed in its entirety.

3

### B. Plaintiff cannot prove Defendants acted in bad faith or unfairly to deprive Plaintiff of its bargained benefit (Count Two).

A claim for the implied covenant of good faith and fair dealing cannot directly contradict an express contract term. *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. App. 2004). Nor can it be based on the same conduct establishing a separately pled contract claim. *Ipro Tech LLC v. Sun W. Mortg. Co.*, 2019 U.S. Dist. LEXIS 48152, at *10 (D. Ariz. Mar. 21, 2019). Plaintiff must instead offer evidence that Defendants acted in "*bad* faith or *un*fairly to deprive [Plaintiff] of the benefit of [its] bargain." *Id.* (emphases in original). Plaintiff must also prove Defendants' actions proximately caused it harm[3], and prove its damages with "reasonable certainty." *Waesche v. Embry-Riddle Aeronautical Univ. Inc.*, 2023 U.S. Dist. LEXIS 175077, at *13 (D. Ariz. Sep. 29, 2023).

None of Plaintiff's six alleged "breaches" meet this standard.

#### 1. Plaintiff's alleged breaches contradict the Agreements' express terms and are separately pled in Count One.

Plaintiff claims Defendants breached the implied covenant by (b) failing to provide artwork and (c) refusing to receive samples for review. [SOF ¶ 47.] But these allegations of breach directly contradict the Agreements, as *neither* Agreement obligates LFI to create artwork absent triggering events nor "receive" samples for review. [SOF ¶¶ 7, 21.] *See Kuehn*, 91 P.3d at 354. Besides, Plaintiff already pleaded Defendants "completely failed to provide artwork" under Count One (*see supra*, Section I.A.1.)—another reason allegation (b) fails. *See Ipro* Tech, 2019 U.S. Dist. LEXIS 48152, at *10.

#### 2. There is no evidence of Defendants' "intent" or "malice," nor *any* damages caused by Defendants' actions.

Plaintiff also claims Defendants breached the implied covenant by (a) entering into the Agreements "without an intent to fulfill" its obligations and by (e) acting with "malice." [SOF

---

[3] Plaintiff's implied covenant claim is limited to contract damages. [*See* Doc. 28 ¶ ("The duty arises by virtue of a contractual relationship.")] *Compare to Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002) ("A party may bring an action in tort claiming damages for breach of the implied covenant of good faith, but only where there is a special relationship between the parties[.]") (citations omitted).

4

¶ 47.] In support, Plaintiff points only to vague claims, although it admits it has no knowledge of what Defendants intent was. [SOF ¶ 48.] These claims are not substantiated with any evidence[4]—let alone *any specific evidence* connecting these alleged breaches to actual damages. [*See e.g.*, SOF ¶ 47.] No rational jury could return a verdict that Defendants' actions proximately caused Plaintiff harm with any reasonable certainty. This claim fails. *See Waesche*, 2023 U.S. Dist. LEXIS 175077, at *15 (D. Ariz. Sep. 29, 2023) ("Without evidence of actual damage, [plaintiff] fails to establish a prima facie claim for breach of the covenant of good faith and fair dealing.").

### 3. There is no evidence Defendants demanded early payment or intentionally stalled or delayed the production process.

Lastly, Plaintiff claims Defendants breached the implied covenant by (d) demanding an early royalty payment "knowing [LFI] would immediately cancel the contract after receipt" and (f) intentionally stalling and delaying the production process. [SOF ¶ 47.] Putting aside the fact that Plaintiff cannot prove Defendants' intent, nor any proximately caused damages (as above), these allegations contradict the evidence and fail to establish Defendant's *bad* faith or *un*fair acts. *Ipro*, 2019 U.S. Dist. LEXIS 48152, at *10.

As an initial matter, allegation (d) is not even factually true. There is no evidence that LFI requested an early payment, since the Second Quarter Royalty payment was due "on or before" June 24, 2018. [SOF ¶ 52.] Regardless, LFI routinely reminded Plaintiff of its upcoming payment. [SOF ¶¶ 49–51.] LFI's regular reminder, even if it came weeks before it terminated the Second Agreement, does not establish "bad faith."

Allegation (f) similarly falls short. The First and Second Agreements granted LFI the absolute discretion to approve/disapprove samples. [SOF ¶¶ 10–17, 24.] The discussions between the parties about the products shows, at best, the parties disagreed about the quality of the products—not that the disagreement was manufactured, disingenuous, or otherwise not in good faith. *Ipro*, 2019 U.S. Dist. LEXIS 48152, at *10 (dismissing claim for the implied

---

[4] Plaintiff's evidence even contradicts Plaintiff's allegation that LFI demanded an early royalty payment. [*See* SOF ¶ 52.]

covenant because a disagreement over defendant's contractual obligation, without evidence of bad faith, could not establish breach of the implied covenant).

Plaintiff's six grounds for its breach of the implied covenant claim all fail—whether by contradicting the Agreements or for lack of evidence.

### C. Plaintiff cannot support its fraud claim (Count Three).

Fraud requires nine elements, including the speaker's knowledge of the representation's falsity; the speaker's intent that the representation be acted on by the recipient in the manner reasonably contemplated; the recipient's reliance on its truth; and the recipient's consequent and proximate injury. *Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982). Each element must be supported by clear and convincing evidence; "fraud may never be established by doubtful, vague, speculative, or inconclusive evidence." *Id.* (citations omitted); *see also Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 562 (Ariz. App. 1998) ("In ruling on a motion for summary judgment [on a claim of fraud], the trial judge views the evidence in light of the substantive evidentiary burden.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986)).

Plaintiff cannot meet this burden in several regards.

#### 1. There is no evidence of Defendants' "knowledge" or "intent."

Although fraud can be based on unfulfilled promises or expressions concerning future events, such promises must be "made with the present intent not to perform." *Enyart*, 985 P.2d at 562; *McAlister v. Citybank (Arizona)*, 829 P.2d 1253, 1260 (Ariz. App. 1992) ("Unless the plaintiff can prove that the defendant ***intended to deceive*** the plaintiff ***at the time the representation was made***, the claim cannot stand.") (emphases added).

Plaintiff claims Defendants falsely assured Plaintiff they would get LFI "up to speed and organized" to help facilitate the production and distribution of all Kickstarter Campaign products by June 2018.[5] [SOF ¶¶ 53, 54.] But this statement is hardly an expression of fact,

---

[5] Plaintiff never pleaded the specific date when the alleged false promises that are the basis of its fraud claim were made. [Doc. 28 at ¶¶ 85–89.] During discovery, Plaintiff testified stated that the representation occurred "before and during [Plaintiff's] meeting with [LFI's representative] in Los Angeles," and that, Ms. Frank made her representations months prior to

6

capable of being an actionable basis for fraud. It is, at best, an expressed aspirational goal—a vague statement of optimism, not actionable as fraud. *See, e.g.*, *Young v. Tesla, Inc.*, 2022 U.S. Dist. LEXIS 145747, at *29 (D.N.M. Aug. 15, 2022) (finding defendant's statement did not amount to "fraud" because defendant did not make any "absolute representation" on which plaintiff could rely).

But even if this statement constitutes an actionable "future promise," Plaintiff cannot prove Defendants' "present intent" not to perform. At best, Plaintiff's evidence is speculative: Plaintiff perception was that Defendants' post-promise actions "did not match up with what they told [Plaintiff]" and that LFI terminated the Second Agreement about six weeks after the meeting with Ms. Ross and Ms. Frank, after receiving Plaintiff's Second Quarterly Royalty Payment. [SOF ¶¶ 57, 58.] None of Plaintiff's cited examples (some of which amount of little more than industry gossip) establish Defendants' intent to deceive at the time of the promises—*even if* Defendants never ultimately fulfilled those promises. *McAlister*, 829 P.2d at 1260 ("McAlister argues, in effect, that Citibank's present intent not to perform these promises can be inferred from the fact that they were never fulfilled. We hold that this assertion, without any independent evidence that Citibank did not intend to fulfill its promises, is inadequate to infer intent to deceive."). Besides, Plaintiff cannot introduce any evidence of any misrepresentation that directly contradicts the terms of the written Agreements. *See Sun Lodge v. Ramada Dev. Co.*, 606 P.2d 30, 32 (Ariz. App. 1979) (finding the trial court properly excluded evidence on plaintiff's fraudulent inducement claim because the alleged misrepresentations directly contradicted the written agreement).

### 2. There is no evidence of Plaintiff's reliance or consequent injury.

Fraud also requires justifiable reliance and consequential injury. *See Sw. Non-Profit Hous. Corp. v. Nowak*, 322 P.3d 204, 212 (Ariz. App. 2014) (holding the recipient of fraudulent misrepresentation could recover only if he demonstrated he relied on the statement

---

that meeting. [SOF ¶¶ 55–56.] Evidence shows this meeting took place May 14, 2018, i.e., more than three years before this action was brought. [*Id.*] Thus, any alleged promises made at this meeting or, frankly, any time before May 27, 2018, are time-barred and cannot serve as an actionable basis for Plaintiff's fraud claim. *See* A.R.S. § 12-543.

7

"in acting or refraining from action") (citing Restatement (Second) of Torts § 537)); *see also Dillon v. Zeneca Corp.*, 42 P.3d 598 (Ariz. App. 2002) (granting defendant summary judgment when plaintiffs failed to "demonstrate they suffered a consequent and proximate injury as the result of their reliance"); *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 30 F. Supp. 2d 1182, 1198 (D. Ariz. 1998) (holding it "must be proved with a good deal of certainty that any [damages] were the direct and proximate result of the fraud") (citation omitted).

Plaintiff claims it relied on Defendants' statements about getting LFI "up to speed and organized" by "continu[ing] to focus on development of LFI products"; "finance[ing] purchase orders received"; paying to expedite sample production; developing additional products for LFI; paying warehouse and logistics fees for LFI products; continuing promotional activities; and taking out loans to cover the "business promises conveyed by LFI." [SOF ¶¶ 59, 60.] But even if Plaintiff could show it took such steps after the alleged promises (it cannot), this purported conduct does not satisfy the type of reliance required for fraud—only that Plaintiff tried to meet its contractual obligations. For example, the Second Agreement required Plaintiff "use its best efforts" to "manufacture, distribute, promote, market and sell the Licensed Products [SOF ¶¶ 9, 18, 23, 26]; provide product samples [SOF ¶¶ 12–15, 24]; and make certain royalty payments. [SOF ¶¶ 8, 22.] In other words, every action taken in "reliance" of the representation can be traced to Plaintiff's preexisting legal obligations, and Plaintiff cannot prove, to any degree of certainty, that it took any specific actions based on Defendants' statements. *See Nowak*, 322 P.3d at 212 (defendant entitled summary judgment on fraudulent misrepresentation claim where plaintiff failed to establish that it took any action based on defendant's statements).

Plaintiff's fraud claim also fails because Plaintiff cannot show it suffered a consequent and proximate injury as a result of its reliance. For one, the majority of Plaintiff's claimed loss stems from its efforts to comply with the Second Agreement, including paying to expedite sample production and warehouse and "logistics fees." [SOF ¶ 60.] As to the remaining costs[6],

---

[6] Plaintiff may only recover pecuniary damages. *Echols*, 647 P.2d at 632 ("the Restatement (2d) of Torts contemplates recovery in fraud actions only for pecuniary loss").

8

Plaintiff cannot prove it incurred any such amounts between May 14, 2018 (the earliest possible date of the statements) and July 3, 2018 (when LFI terminated the Second Agreement). [*Id.*] Plaintiff's evidence falls far short of the "good deal of certainty" required for fraud damages. *See Med. Lab. Mgmt. Consultants*, 30 F. Supp. 2d at 1199. This alone renders Plaintiff's claim moot. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

### D.     **Plaintiff's own evidence bars unjust enrichment (Count Four).**

Unjust enrichment "has no application" "if there is a specific contract which governs the relationship of the parties." *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (1976). This is because a contract "precludes a finding" that the plaintiff lacks "adequate remedy at law," given that "a party deprived of benefits due under a contract generally has the ability to enforce the contract." *Little v. Grand Canyon Univ.*, 2023 U.S. Dist. LEXIS 146666, at *19 (D. Ariz. Aug. 21, 2023).

Plaintiff admits: the Agreements were valid, written contracts governing Plaintiff's use and sale of all Licensed Products. [SOF ¶¶ 4, 19, 61.] Given Plaintiff's obvious ability to pursue an adequate remedy (*see, e.g.,* Count One), this claim must be dismissed at least as to LFI, to prevent double recovery. *Little*, 2023 U.S. Dist. LEXIS 146666, at *19 (dismissing unjust enrichment claim which sought damages from the same rights and obligations as the contract).

Plaintiff's claim also fails in regard to Ms. Frank. Even assuming Plaintiff can show Ms. Frank received some benefit, Plaintiff cannot substantiate *its* claim to compensation. *See Freeman v. Sorchych*, 245 P.3d 927, 936–37 (Ariz. App. 2011) ("[F]or an award based on unjust enrichment, a plaintiff must show that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not conferred officiously."). For example, Plaintiff cannot establish that it would have paid LFI any different amount for the services rendered, nor that it needlessly provided compensation to Ms. Frank.

9

[SOF ¶¶ 62, 63.] Plaintiff's unjust enrichment claim fails as to both Defendants.

### E. The evidence does not support Plaintiff's defamation claim (Count Five).

To prevail on a defamation claim, Plaintiff must prove (1) Defendants published a false and defamatory statement (2) Defendants were at fault for publishing the statement, and (3) Plaintiff suffered damages because of Defendants' actions. *Best W. Int'l, Inc. v. Furber*, 2008 U.S. Dist. LEXIS 70552, at *13 (D. Ariz. Sep. 5, 2008). Because Plaintiff cannot prove falsity nor fault, this claim too fails.

#### 1. Plaintiff cannot prove each statement was false.

"To be defamatory, a publication must be false[.]" *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). Slight inaccuracies do not make a statement false if the statement is substantially true, i.e., if the statement differs from the truth only in insignificant details. *See Lundin v. Discovery Communs. Inc.*, 352 F. Supp. 3d 949, 961 (D. Ariz. 2018) (finding technical inaccuracies in defendant's statements did not materially alter the "sting" or "gist" of the scene depicted and thus could not serve as the basis for defamation).

Plaintiff cannot meet this bar for any factual statement contained in the Article. [*See* SOF ¶¶ 64–66.]

> Statement 1: "Glamour Dolls completely failed to live up to our agreement, which includes their obligations within the Kickstarter campaign, failing to manufacture and deliver the products that our fans rightfully deserved."

Statement #1 is substantially true: Plaintiff *did* fail to manufacture and deliver certain Kickstarter Campaign products, for which fans had paid. [SOF ¶ 67.] Plaintiff's other admitted failures—failing to pay the minimum royalty due, and manufacturing and delivering unapproved products—renders the "gist" of the entire statement true. *Lundin*, 352 F. Supp. 3d at 961.

> Statement 2: "The Lisa Frank Company knows how you feel, as we did not receive what Glamour Dolls promised us either."

Statement #2 contains both non-defamatory statements ("[LFI] knows how you feel") and substantially true statements, as Plaintiff never paid the minimum royalty owed, nor completed the term of the Second Agreement. [SOF ¶ 70.] This too, is not actionable. *See*

10

*Turner v. Devlin*, 848 P.2d 286, 288–89 (Ariz. 1993) (defendant's "subjective impression" did not constitute defamation).

> Statement 3: "After many months of pushing Glamour Dolls to live up to its contractual obligations and deliver products – to our fans and retailers that ordered products – Lisa Frank Inc. reached the point of exasperation, terminated the agreement with Glamour Dolls, and contacted the Federal Government."

Statement #3 contains similar components as Statement #1: Plaintiff *did not* live up to its contractual obligations and failed to deliver products to fans and retailers. [SOF ¶¶ 67–69.] LFI also "pushed [Plaintiff] to live up to its contractual obligations," reminding Plaintiff to pay its royalty payments, and working with Plaintiff to secure complete approval of all Licensed Products. [SOF ¶ 71.] It is also true that Plaintiff terminated the Second Agreement and contacted the federal government to report Plaintiff's non-performance and misuse of Kickstarter funding. [SOF ¶ 72.] Statement #3 is also not actionable. *See Udd v. City of Phx.*, 2020 U.S. Dist. LEXIS 55766, at *67 (D. Ariz. Mar. 30, 2020) ("combination of a true statement, which is a complete defense to defamation, and a non-actionable opinion," not actionable).

> Statement 4: "To say we are disappointed by the events that transpired as a result of this license is an understatement."

Statement #4 is not defamatory, and addresses LFI's subjective feelings; even if tangentially related to Plaintiff, the observation fails to impeach Plaintiff's honesty, integrity, virtue, or reputation. Statement #4 cannot sustain defamation. *Turner*, 848 P.2d at 288–89.

### 2. Plaintiff cannot prove Defendants failed to act reasonably to discover the truth.

Even if the Article contains any actionable statements (it does not), Plaintiff cannot prove Defendant's fault. In the defamation context (and with no applicable privilege), "fault" equates to negligence or the failure to act "reasonably in attempting to discover the truth or falsity or the defamatory character of the publication[.]" *Best W. Int'l*, 2008 U.S. Dist. LEXIS 70552, at *20–21. This is Plaintiff's burden, and to survive summary judgment, Plaintiff must present evidence of fault "such that a reasonable jury could return a verdict" in its favor. *Id.*

11

"The question in this motion, therefore, is not whether [Defendants] proved that [they] did not act with actual malice or negligence, but whether [Plaintiff] has presented sufficient evidence that [they] did." *Id.*

Plaintiff cannot show that Defendants failed to act reasonably. Plaintiff has not, for example, produced evidence that Defendants knew the above statements were false and said them anyway or failed to investigate the truth of its statements prior to publishing its statement to Insider. [SOF ¶¶ 66, 48; *see generally* Ex. 3.] The fact remains that most of the statements arise from a genuine disagreement as to each party's contractual obligations. This is not enough to prove "fault." *See Bobolas v. Does*, 2010 U.S. Dist. LEXIS 110856, at *11–12 (D. Ariz. Oct. 1, 2010) (subject belief that statements were made "by individuals with knowledge of or reckless disregard for the truth," did not provide sufficient evidence of fault).

### F. Plaintiff's cannot establish the requisite damages for its false advertising or trade libel claims (Counts Six and Seven).

Proof of injury is necessary to every claim—including false advertising and trade libel. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993); *Tempe v. Pilot Props.*, 527 P.2d 515, 522 (Ariz. App. 1974). Damages arising from tort (such as these) must be established with reasonable certainty; even if they cannot be calculated with absolute exactness, a reasonable basis for computation <u>must exist</u>. *See Lindy Pen*, 982 F.2d at 1407. Trade libel imposes an even *<u>higher</u>* bar, requiring proof of special damages. *See Gee v. Pima Cty.*, 612 P.2d 1079, 1080 (Ariz. App. 1980) (holding that summary judgment was proper because "appellants failed to allege special damages").

To be clear, the only basis of Plaintiff's false advertising and trade libel claim is the Article. [SOF ¶ 73.] But even assuming the Article meets the standard of false advertising or trade libel, Plaintiff cannot prove that the Article caused any injury: Plaintiff's own testimony establishes that Plaintiff lacked all ability to manufacture any products almost a full year before the Article's publication. [SOF ¶ 76.] And the bankruptcy filing of Peter Georgotas, the 75% owner of Plaintiff and its sole employee by the end of 2018, valued Glamour Dolls Inc. at a nominal $1.00 days after the Article. [SOF ¶¶ 74, 75.] Plaintiff offers no evidence in rebuttal

nor to explain how an admittedly worthless company could be injured—even though Plaintiff is in the best position to identify its harm. *See Lindy Pen*, 982 F.2d at 1408 ("Lindy was in the best position to identify its own sales, but declined to provide the court with any evidence of its loss caused by Bic's wrong doing. . . . The court was correct, therefore, in finding that Lindy failed to sustain its burden[.]").

Plaintiff's trade libel claim fails for another reason, as there is no evidence the malice necessary to support a claim for special damages. *See Tempe*, 527 P.2d at 522. To show malice, Plaintiff must produce evidence that would permit a reasonable jury to find by clear and convincing evidence that Defendants **knew** the falsity of their statements or held "**serious doubts** as to their truth." *Green Acres Tr. v. London*, 688 P.2d 617, 624 (Ariz. 1984) (emphasis added). The clear and convincing standard of proof must be considered in ruling on a motion for summary judgment. "Thus, a plaintiff must present evidence from which a reasonable jury could find that proof of actual malice is clear and convincing." *Wietecha v. Ameritas Life Ins. Corp.*, 2006 U.S. Dist. LEXIS 70320, at *34 (D. Ariz. Sep. 27, 2006) (citing *Anderson*., 477 U.S. at 254).[7] This is a substantial burden: if the evidence presented "is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence," Defendants should be granted summary judgment. *Id.*

Plaintiff cannot meet this burden. Although Plaintiff asserts Defendants "intentionally published false and disparaging statements, knowing that such statements would be disseminated," it presented no evidence that Defendants **knew** their statements were false or held **serious doubts** as to their truth. [SOF ¶¶ 66, 48.] Importantly, Plaintiff's insistence that the statements were false is not enough to establish the requisite level of fault. *See Sewell v. Brookbank*, 581 P.2d 267, 271 (Ariz. App. 1978) (affirming summary judgment because plaintiff's "mere denial" did not demonstrate the malice necessary to overcome defendant's qualified privilege). Nor is Plaintiff's conclusory assertion that Defendants knew the

---

[7] Trade libel claims are analyzed similar to defamation claims. *See Morley v. Smith*, 2007 U.S. Dist. LEXIS 5500, at *7 (D. Ariz. Jan. 23, 2007). It follows that "malice" for trade libel is similarly adjudicated. *Id.* (finding plaintiff filed to present evidence of malice, and thus, could not succeed on their claim for trade libel).

statements were false sufficient. *See Wietecha*, 2006 U.S. Dist. LEXIS 70320, at *34 (granting defendant summary judgment because plaintiff provided no evidence in support of his conclusory assertion that defendants conducted a "sham" investigation). Plaintiff's trade libel thus claim fails for this reason too. *Tempe*, 527 P.2d at 522 ("[I]t was incumbent upon [plaintiff] to come forward with evidence showing the actual malice (as compared to implied malice) of [defendant] to avoid the granting of summary judgment. This [plaintiff] failed to do.").

### G. Plaintiff failed to confirm "tortious interference" (Count Eight).

To establish a claim for tortious interference, Plaintiff must show: (a) the existence of a valid contractual relationship or business expectancy; (b) Defendants' knowledge of the relationship or expectancy; (c) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (d) such interference was improper as to motive or means; and (e) damages. *Skydive Ariz., Inc. v. Quattrocchi*, 2009 U.S. Dist. LEXIS 128418, at *37–38 (D. Ariz. Feb. 2, 2009).

Plaintiff alleges "third parties with which [it] had previously dealt and/or which had expressed interest in collaborating with [it] prior to the article's publication, including, but not limited to, MGD Solutions, Inc., Kickfurther, and H-E-B Grocery Company, LP, abruptly backed out and refused to speak or even communicate with [it]." [SOF ¶ 77.] But as a threshold matter, Plaintiff cannot present evidence to establish either element (a) or element (b). [SOF ¶¶ 78–82.] Even assuming for summary judgment that those third parties did, in fact, "back out" of a legitimate contract with Plaintiff that Defendants were aware of, Plaintiff still cannot succeed as there is no evidence that Defendants intentionally interfered with that contract, nor that any such conduct was "improper."

#### 1. There is no evidence of Defendants caused a breach.

Arizona courts interpret "inducing or causing" to impute the "but for" causation standard. *Skydive Ariz.*, 2009 U.S. Dist. LEXIS 128418, at *42–43 (citations omitted). But even viewed in the most favorable light, the evidence does not establish that Defendants *caused* Plaintiff's terminated contractual relationship—only that, after the Article, Plaintiff did not

14

perform work for the named third parties. [SOF ¶ 79–81.] Because inference alone cannot support a "but for" standard, this claim must fail. *Compare to Skydive Ariz.*, 2009 U.S. Dist. LEXIS 128418, at *44 (finding "it is unreasonable to infer" conduct caused the termination of contract despite the events' proximity); *Mann v. GTCR Golder Rauner, L.L.C.*, 351 B.R. 685, 702 (D. Ariz. 2006) (granting summary judgment because plaintiff could not prove defendant "must have known" its conduct would cause a breach contract).

### 2. There is no evidence of "improper" conduct by Defendants.

"Arizona has adopted the definition of 'improper' behavior from the Restatement." *Emplrs. Reinsurance Corp. v. GMAC Ins.*, 308 F. Supp. 2d 1010, 1016 (D. Ariz. 2004) (citations omitted). Relevant factors include the nature and motive of the actor's conduct; the social interest involved; and the relationship between the parties, among others. *Id.*

Once more, Plaintiff cannot meet this burden: Plaintiff offers no evidence that Defendants intended to interfere with Plaintiff's alleged contract or business expectancies. Plaintiff's conclusory claim that Defendants published its false statements "with the knowledge that such statements would be disseminated to the public at large" is speculative at best. [SOF ¶ 77; *see generally* SOF ¶ 48 (and exhibits cited therein).] Without more, Plaintiff cannot prevail. *See Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1160 (D. Ariz. 2016) ("[T]he lack of evidence, rather than speculation of an improper motive supports summary judgment in favor of [defendant] as to the interference with contractual relationship.").

## II. NO REASONABLE JUROR COULD FIND LISA FRANK LIABLE.

Ms. Frank should be dismissed from this suit. In addition to the reasons enunciated above, no evidence supports Ms. Frank's liability in her personal capacity. For one, she is not a party to either Agreement. [SOF ¶¶ 5, 20.] This cannot be disputed.

Recognizing as much, Plaintiff asserts Ms. Frank is liable under an alter ego theory.[8] [SOF 83.] But under Arizona law, "a corporation will be treated as a legal entity until sufficient

---

[8] Plaintiff also alleges "alter ego" as a separate count. [Doc. 28.] The Court has already held that this claim will be treated as a theory of derivative liability, rather than an independent cause of action. [Doc. 41 at 24.]

15

reason appears to disregard the corporate form." *Dietel v. Day*, 16 Ariz. App. 206, 208 (1972). Thus, "[w]here a corporation is operated and maintained for the purpose for which it was incorporated and not as a mere shield of the stockholders, the corporate form should not be disregarded." *Id.* As a result, Plaintiff cannot pierce the corporate veil unless it establishes both (1) "unity of control" and (2) "that observance of the corporate form would sanction a fraud or promote injustice." *Taeger v. Cath. Fam. & Cmty. Servs.*, 196 Ariz. 285, 297 (App. 1999) (citation omitted). Plaintiff's evidence establishes neither.

The first prong, "unity of control," is only shown where "the corporation was not only influenced and governed by [the individual], but that there was also such a unity of interest and ownership that the individuality or separateness of [the individual] and the corporation had ceased to exist." *Dietel*, 16 Ariz. App. at 208. In support, Plaintiff claims that Ms. Frank deposited a royalty check into her personal trust account. [SOF ¶ 88.] This is false. [SOF ¶ 89 (showing wiring instructions for all royalty payments, to be deposited by "LFI").] Plaintiff's contentions "upon information and belief" that Ms. Frank is the sole owner, founder, president, and CEO of LFI is not only untrue (SOF ¶¶ 84, 85), but not a legal basis to pierce the corporate veil even if it were true. *See Ferrarell v. Robinson*, 465 P.2d 610, 613 (Ariz. Ct. App. 1970) ("[T]he mere fact that Kramer was an officer and the sole shareholder in R.I.C., Inc., does not in and of itself make this situation one in which the corporate form should be disregarded."). At bottom, Plaintiff is asserting that LFI was influenced and governed by Ms. Frank. This remains unproven (*see also* SOF ¶¶ 86, 87), but still, does not provide justification to conclude LFI "ceased to exist." *See, e.g.*, *id.* (refusing to find alter ego with without "substantial evidence of intermingling" or improper use of the corporate structure).

Even if Plaintiff could establish "unity of control" (it cannot), Plaintiff fails under the second prong, as it cannot show that "observing the form would allow the corporation to confuse the plaintiffs, frustrate their efforts to protect their rights, and allow the responsible party to evade liability." *Taeger*, 196 Ariz. at 299. But there is no evidence that Plaintiff was (or is) confused *at all* about the entity with which it chose to contract. [*See e.g.*, SOF ¶¶ 4, 19.] Given that Plaintiff pursued eight claims against LFI, it would not promote any injustice to

16

require Plaintiff to seek recourse only from LFI, not Ms. Frank. *Taeger*, 196 Ariz. at 299 (affirming directed verdict dismissing individual when plaintiffs "admittedly were not confused about the relationship" between the individual and the entity, and "understood" they were working with the entity).

### III. **PLAINTIFF CANNOT DISPUTE: PLAINTIFF OWES LFI $125,000.**

As stated above, a breach of contract claim requires the existence of a contract, breach, and resulting damages. *Idearc Media LLC,* 929 F. Supp. 2d at 948. But unlike Plaintiff, LFI can bear its burden: there is no genuine dispute that the Second Agreement required Plaintiff pay a minimum royalty, and that Plaintiff did not do so. [SOF ¶¶ 22, 52, 70.] This obligation did not change upon termination. [*See* Second Agreement (Doc. 12-2) § 5.2(i).] LFI's damages are also unrefuted ($125,000 plus 18% interest). [*Id.*] Summary judgment on this claim, for LFI, is proper. *See Idearc Media LLC,* 929 F. Supp. 2d at 948 (awarding summary judgment when there was no dispute of material fact that defendants breached their obligations by failing to pay the amount due for the advertising).

### IV. **CONCLUSION**

For these reasons, Defendants LFI and Lisa Frank asks the Court to grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, and grant summary judgment as to LFI's breach of contract claim, for Plaintiff's failure to pay the minimum royalty due under the Second Agreement.

DATED this 10th day of November 2023.

                GREENBERG TRAURIG, LLP

                By: */s/ Laura Sixkiller*
                    Laura Sixkiller
                    Shalayne L. Pillar
                    *Attorneys for Defendant/Counterclaimant Lisa Frank, Inc. and Lisa Frank*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000