Jordan Susman (CA Bar No. 246116)
Margo Arnold (CA Bar No. 278288)
NOLAN HEIMANN LLP
16000 Ventura Blvd. Ste. 1200
Encino, California 91436
Telephone: (818) 574-5710
Facsimile: (818) 574-5689
E-mail:    jsusman@nolanheimann.com
           marnold@nolanheimann.com
Attorneys for Plaintiff and Counterdefendant
GLAMOUR DOLLS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Glamour Dolls, Inc., | ) | Case No.  4:21-CV-0228-TUC-SHR |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GLAMOUR DOLLS, INC.'S** |
| vs. | ) | **CONTROVERTING AND** |
| | ) | **ADDITIONAL STATEMENT OF** |
| Lisa Frank, Inc.; and Lisa Frank, in her | ) | **FACTS AND OBJECTIONS** |
| individual and corporate capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| Lisa Frank, Inc., | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Glamour Dolls, Inc., | ) | |
| | ) | |
| Counterdefendant | ) | |
| | ) | |

Pursuant to Fed. R. Civ. P. 56(a) and LRCiv 56.1, Plaintiff Glamour Dolls, Inc. submits the following Controverting and Additional Statement of Facts in response to Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Partial Summary Judgment (ECF 90). Glamour Dolls' Additional Statement of Undisputed Material also is incorporated herein. To the extent a statement of fact is responded to as undisputed in whole or in part, that is solely for purposes of summary judgment. Pursuant to LRCiv 7.2(m)(2), Glamour Dolls lodges the following objections to the admissibility of evidence offered in support of Defendants' Statement of Undisputed Material Facts.

## CONTROVERTING STATEMENT OF FACTS

1.    Undisputed that Ms. Frank believes "LFI is beloved around the globe for its whimsical character world and colorful lifestyle aesthetic. For over four decades, LFI has spread happiness and joy with millions of fantastic products."

2.    Undisputed that LFI no longer manufacturers its own goods.

3.    Undisputed.

4.    Undisputed.

5.    Undisputed.

6.    Undisputed.

7.    Disputed.  The "Artwork" licensed included "LFI's existing artwork, copyrights, characters, shapes, designs, and other distinctive creative elements, (and additional such artwork as may be agreed by the Parties…"  "If Licensee requires LFI to modify Artwork or conform it to a specific product application, or to provide any special or addition design…, license shall pay a fee ("Artwork Fee" to LFI determined as follows." *See* First Agreement (Doc 12-1), §§ 3.1, 3.2.

8.    Undisputed.

9.    Undisputed.

10.    Undisputed.

11.    Undisputed.

12.    Undisputed.

1    13.    Undisputed.

2    14.    Undisputed.

3    15.    Undisputed.

4    16.    Disputed.  After approval, LFI retained the right to "discontinue the

5  manufacture and distribution" of any Licensed Product for failure to meet LFI's quality

6  standards if it provided written notice of the failure to Glamour Dolls and Glamour Dolls

7  failed to remedy the quality issue within ten days.  *See* First Agreement (Doc 12-1), §

8  8.2(e) (emphasis added).

9    17.    Undisputed.

10    18.    Disputed. The First Agreement did not provide LFI with the right to

11  terminate if Glamour Dolls failed to adhere to the approval process, but if Glamour Dolls

12  used, marketed, distributed, or sold unapproved products. *See* First Agreement (Doc 12-1),

13  § 10.  Undisputed as to the remainder.

14    19.    Undisputed.

15    20.    Undisputed.

16    21.    Disputed.  The "Artwork" licensed included "LFI's existing artwork,

17  copyrights, characters, shapes, designs, and other distinctive creative elements, (and

18  additional such artwork as may be agreed by the Parties…"  "If Licensee requires LFI to

19  modify Artwork or conform it to a specific product application, or to provide any special

20  or addition design…, license shall pay a fee ("Artwork Fee" to LFI determined as

21  follows."  *See* Second Agreement §§ 3.1, 3.2.  Undisputed as to the summary of § 1.1.

22    22.    Undisputed.

23    23.    Disputed to the extent that it presumes that Glamour Dolls could

24  "manufacture, distribute, promote, market and sell the Licensed Products" to anyone

25  without limitation.  The 2017 Agreement defined the distribution channels that Glamour

26  Dolls could pursue and only included: Ipsy, Birchbox, Hot Topic, Dolls Kill, Unicorn

27  Crate, website, Indiegogo, Ulta Beauty, and Nordstrom.  *See* Second Agreement § 2.

28  Undisputed as to the recitation of § 4.1.

1    24.    Undisputed.

2    25.    Undisputed.

3    26.    Disputed as the First Agreement did not provide LFI with the right to

4    terminate if Glamour Dolls failed to adhere to the approval process, but if Glamour Dolls

5    used, marketed, distributed, or sold of unapproved products.  *See* First Agreement (Doc

6    12-1), § 10.  Undisputed as to the remainder.

7    27.    Disputed.  LFI terminated the 2017 Agreement via phone call on July 3,

8    2023. LFI then followed up with a termination letter on July 25, 2018.  *See* Deposition of

9    Janice Ross, Volume II (October 25, 2023), Glamour Dolls' Exhibit 1, pgs. 189:1-190:6,

10    197:7-22; Letter of Termination (Doc. 36-3).

11    28.    Undisputed.

12    29.    Undisputed.

13    30.    Undisputed.

14    31.    Undisputed.

15    32.    Undisputed.

16    33.    Undisputed.

17    34.    Undisputed.

18    35.    Undisputed.

19    36.    Undisputed.

20    37.    Undisputed as to the content of the June 5, 2018, email.  Disputed as to the

21    remainder because LFI decided to change the Wengie palette artwork and never provided

22    Glamour Dolls with the updated artwork.  The PowerPoint Presentation stated "Also, will

23    be sending you [LFI] new die line for the updated Wengie palette."  *See* Defendants'

24    Exhibits 6 and 8; Email chain between David Evered and Nicholas Rosenberg, starting

25    October 8, 2018, Glamour Dolls' Exhibit 6.

26    38.    Disputed as to the fact that a delivery schedule needed to be agreed upon.

27    *See* First Agreement (Doc 12-1).  Disputed to the extent that it omits the information that

28    Glamour Dolls was waiting on Defendants to approve the packaging size before it could

1  send die-lines.  *See* Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour

2  Dolls' Exhibit 4, pgs. 260:14-261:16.  Undisputed as to the remainder.

3      39.    Disputed as to the fact that a delivery schedule needed to be agreed upon or

4  additional fee needed to be paid. *See* Second Agreement.  Undisputed as to the remainder.

5      40.    Undisputed that Glamour Dolls made the allegations in its First Amended

6  Complaint.

7      41.    Undisputed.

8      42.    Undisputed that Mr. Georgotas testified that Glamour Dolls never sent

9  formal written notice.

10     43.    Undisputed.

11     44.    Undisputed.

12     45.    Disputed.  Defendants created the eyeshadow and bronzer artwork and were

13  the ones who forgot to add their own copyright information.  *See* Defendants' Exhibits 16,

14  18, and 20 (pg. GDI029209); Email chain between Shana Urban, Peter Georgotas, Laura

15  Crawford and Liss Frank, starting date April 27, 2017, Glamour Dolls' Exhibit 15; Email

16  from Laura Crawford to Charon Chin and Lisa Frank, dated June 9, 2017, Glamour Dolls'

17  Exhibit 25.  Undisputed that LFI provided feedback on a previously approved design.  *See*

18  Email chain between Shana Urban, Peter Georgotas, Laura Crawford and Liss Frank,

19  starting date April 27, 2017, Glamour Dolls' Exhibit 15; Email from Laura Crawford to

20  Charon Chin and Lisa Frank, dated June 9, 2017, Glamour Dolls' Exhibit 25; Deposition

21  of Peter Georgotas, Volume II (August 24, 2013), Glamour Dolls' Exhibit 5, pgs. 589:10-

22  14, 648: 8- 649:9.

23     46.    Disputed.  Defendants made decisions without consulting Glamour Dolls.

24  *See* Email from Janice Ross to Lisa Frank and Shannon McPhillips, dated June 7, 2018,

25  Glamour Dolls' Exhibit 22; Email chain between Laura Crawford, Shannon McPhillips,

26  and Lisa Frank, starting June 8, 2017, Glamour Dolls' Exhibit 24.  If Defendants requested

27  a change, Glamour Dolls felt the change then had to be made since Defendants had final

28  approval over products.  *See* Deposition of Peter Georgotas, Volume 1 (August 23, 2013),

1    Glamour Dolls' Exhibit 4, pgs. 168:14-22.

2         47.    Undisputed as to the allegations in the First Amended Complaint.

3         48.    Disputed to the extent that it infers that evidence does not exist of

4    Defendants' "intent," knowledge, or "malice." Specifically, evidence shows that

5    Defendants knew their approvals were required for products but refused to provide

6    feedback until the June 2018 royalty payment was made. Defendants also knew that

7    sourcing new bag materials or lip balm colors would take weeks and delay a product from

8    being ready for production. First Agreement, §§ 8.2, 8.3; Deposition of Janice Ross,

9    Volume II (October 25, 2023), Glamour Dolls' Exhibit 1, pgs. 94:2-4, 96:23-97:6;

10   Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 161:1-17;

11   165:2-18, 168:14-169:2; Email from Janice Ross to Lisa Frank and Shannon McPhillips,

12   dated June 7, 2018, Glamour Dolls' Exhibit 20; Email chain between Chanel Cohn, Janice

13   Ross, Shannon McPhillips, Peter Georgotas, and Lisa Frank, starting date Jaune 14, 2018,

14   Glamour Dolls' Exhibit 24; Email chain between Janice Ross and Peter Georgotas, starting

15   June 15, 2018, Glamour Dolls' Exhibit 10; emails from Chanel Cohn to Janice Ross,

16   Shannon McPhillips, Peter Georgotas, and Lisa Frank, first dated June 18, 2018, Glamour

17   Dolls' Exhibit 30. Undisputed as to the content of Glamour Dolls' interrogatories and

18   deposition testimony.

19        49.    Undisputed.

20        50.    Disputed to the extent Defendants imply that Glamour Dolls did not make

21   timely royalty payment, as the payment was made on May 3.  *See* Deposition of Peter

22   Georgotas, Volume II (August 24, 2013), Glamour Dolls' Exhibit 5, pgs. 469:1-24.

23   Undisputed to the remainder.

24        51.    Undisputed.

25        52.    Undisputed.

26        53.    Undisputed as to the content of the First Amended Complaint.

27        54.    Undisputed as to Glamour Dolls' discovery response.

28        55.    Undisputed.

1    56.    Undisputed.

2    57.    Undisputed as to Mr. Georgotas' deposition testimony.

3    58.    Undisputed as to the content of Glamour Dolls' interrogatories and

4  deposition testimony.

5    59.    Undisputed as to the content of Glamour Dolls' interrogatories and

6  deposition testimony.

7    60.    Undisputed that no documentary evidence was located by Glamour Dolls

8  after reasonable search efforts.

9    61.    Undisputed.

10    62.    Undisputed as to the content of the First Amended Complaint.  Disputed to

11  the extent that it infers that there is no evidence to indicate that Ms. Frank received a

12  benefit from Glamour Dolls' payment of $701,308.73 to LFI.  Ms. Frank benefited from

13  the $701,308.73 that Glamour Dolls paid LFI as both its president and, at the time, its sole

14  shareholder.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2,

15  pgs. 181:2-183-7.

16    63.    Disputed.  This document does not identify the accounts in which deposits

17  were made.  Ms. Frank benefited from the $701,308.73 that Glamour Dolls paid LFI as

18  both its president and, at the time, its sole shareholder.  *See* Deposition of Lisa Frank

19  (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 181:2-183-7.

20    64.    Undisputed.

21    65.    Undisputed.

22    66.    Disputed.  Glamour Dolls' defamation claim is based on Defendants'

23  publication of the statement to Insider, "knowing such statements would be disseminated

24  to the public at large…"  *See* Dkt. # 28, ¶ 99.  Glamour Dolls has produced evidence to

25  show that Defendants made the statement to Insider even though they knew:

26        i.    Glamour Dolls had paid it $701,308.73;

27        ii.    They had terminated the 2017 License Agreement;

28        iii.    Until Defendants' termination of the 2017 License Agreement,

1    Glamour Dolls was diligently working to design and manufacture

2    collaboration products, and;

3    iv.    They had not made an official report about Glamour Dolls to the

4    government.

5   *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 12; Defendants' Exhibits 11, 13,

6   15, 16, 18, 20, 25, 27, 33; Defendants' Termination Letter, Dkt. 36-3; Deposition of Lisa

7   Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 223:16- 236:3.

8    67.    Undisputed that Glamour Dolls delivered some Kickstarter orders but not

9   every order.  *See* Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour

10   Dolls' Exhibit 4, pgs. 161:2-10, 196:1-9; Deposition of Lisa Frank, (October 18, 2023),

11   Glamour Dolls' Exhibit 2, pgs. 97:16-20.

12    68.    Undisputed that Glamour Dolls failed to deliver some products to Hot Topic.

13   Disputed as to the remainder.  Glamour Dolls delivered products promised to Ipsy and

14   Dolls Kill. Glamour Dolls also delivered some of the product promised to Hot Topic.  *See*

15   Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4,

16   pgs. 161:11-25; 196:1-9; Deposition of Lisa Frank, (October 18, 2023), Glamour Dolls'

17   Exhibit 2, pgs. 97: 16-20.

18    69.    Undisputed.

19    70.    Disputed.  Defendants' improper termination of the 2017 License Agreement

20   excused Glamour Dolls from having to further perform pursuant to the Agreement,

21   including, making any additional royalty payments.  *See* Letter of Termination (Doc. 36-

22   3); Second Agreement (Doc. 12-2) § 9; Deposition of Janice Ross, Volume II (October 25,

23   2023), Glamour Dolls' Exhibit 1, pgs. 201:7-15; 202:10-203:6.

24    71.    Disputed.  LFI did not "push" Glamour Dolls to live up to its contractual

25   obligations. Glamour Dolls was in constant communication with LFI, including following

26   up on requests for feedback and approval, and made every required royalty payment up

27   until LFI terminated the 2017 License Agreement.  *See* Declaration of Lisa Frank,

28   Defendants' Exhibit 1, ¶ 12; Defendants' Exhibits 11, 13, 15, 20, 16, 18, 20, 25, 27, and

33; Glamour Dolls' Exhibits 8, 13-15, 17-20, 30-31, and 37.  In the June 4, 2018 email, Ms. Ross asked Glamour Dolls to prepare an agenda and it was Glamour Dolls who prepared and attached the updated products approval chart.  *See* Defendants' Exhibit 33.

72.    Disputed.  Ms. Frank did not contact the federal government. She mentioned Glamour Dolls in passing to an FBI agent while the agent was in her office to discuss another manner. Ms. Frank admitted that nothing came from the conversation.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 233:16-236:3.  Mr. Georgotas admitted that someone claiming to be an FBI agent contacted his attorney, but that his attorney believed the caller was impersonating an FBI agent.  *See* Deposition of Peter Georgotas, Volume II (August 24, 2023), Glamour Dolls' Exhibit 5, pgs. 424:15-425:16.

73.    Undisputed.

74.    Undisputed.

75.    Undisputed.

76.    Undisputed as to Mr. Georgotas's testimony regarding the state of Glamour Dolls at the end of 2018.

77.    Undisputed.

78.    Undisputed.

79.    Undisputed.

80.    Undisputed.

81.    Undisputed.

82.    Undisputed.

83.    Undisputed.

84.    Undisputed.

85.    Disputed.  During the relevant timeframe, Ms. Frank was the sole shareholder of LFI. Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 182:14-22.

86.    Undisputed that Glamour Dolls' allegations regarding Ms. Frank's alter ego

liability were based upon information and belief.  Disputed to the extent that it implies that there is no evidence to support Ms. Frank's alter ego liability. *See* Deposition of Peter Georgotas: 168:14-22, List at 181:6–16.; Deposition of Lisa Frank (October 18, 2023), 181:23-182:4; Deposition of Lisa Frank (October 18, 2023), 182:14-22; Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 2; Deposition of Lisa Frank (October 18, 2023), 183:5-7; Deposition of Lisa Frank (October 18, 2023), 196:11-197:3; 197:7-198:14, 198:15-200:3; Deposition of Janice Ross 54:6-55:16; Deposition of Peter Georgotas: 29:19-30:2; Peter: 168:14-22; Deposition of Peter Georgotas: 155:15-25; Deposition of Lisa Frank (October 18, 2023), 177:1-19, Depo Exhibit 126; Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 3; Deposition of Janice Ross 54:6-55:16; Deposition of Peter Georgotas: 29:19-30:2; Deposition of Peter Georgotas: 168:14-22; Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 3; Deposition of Janice Ross 54:6-55:16; Peter: 29:19-30:2

87.    Undisputed as to Ms. Frank's deposition testimony. Disputed as to the accuracy of that testimony.  *See* Deposition of Peter Georgotas: 168:14-22.

88.    Undisputed.

89.    Undisputed.

## **GLAMOUR DOLLS' ADDITIONAL STATEMENT OF FACTS**

1.    In 2016, the parties entered into a partnership agreement for the purpose of creating a make-up line (the "2016 Agreement").  *See* 2016 License Agreement, Dkt. 36-1.

2.    Pursuant to the 2016 Agreement, Defendants were to provide Glamour Dolls with Lisa Frank-branded artwork so that Glamour Dolls could then, with Defendants' approval, manufacturer and sell Lisa Frank x Glamour Dolls makeup products.  *See* 2016 License Agreement, Dkt. 36-1.

3.    In exchange for their services, Glamour Dolls agreed to pay Defendants the greater of one hundred thousand dollars ($100,000) or fifteen percent (15%) of all Lisa Frank x Glamour Dolls makeup products sold.  *See* 2016 License Agreement, Dkt. 36-1, ¶ 6.

4.      In 2017, Glamour Dolls and Defendants renewed their partnership agreement (the "2017 Agreement").  *See* 2017 License Agreement, Dkt. 36-2.

5.      In the 2017 Agreement, Defendants increased their compensation requirement by five hundred percent (500%), requiring payment of the greater of five-hundred-thousand dollars ($500,000) or twenty percent (20%) of all Lisa Frank x Glamour Dolls make-up products sold.  *See* 2017 License Agreement, Dkt. 36-2, ¶ 6.

6.      Both the 2016 and 2017 Agreements (collectively, the "Agreements") required Defendants to provide Glamour Dolls with Lisa Frank-branded artwork.  *See* 2017 License Agreement, Dkt. 36-2, ¶ 1-3.

7.      Defendants admit that they never provided Glamour Dolls with artwork for an eye shadow pallet referred to as the "Wengie Pallet." *See* Defendants' Exhibit 8; Email chain between David Evered and Nicholas Rosenberg, starting October 8, 2018, Glamour Dolls' Exhibit 6.

8.      The Agreements did not require Glamour Dolls to provide payment or a delivery schedule in advance of Defendants providing artwork.  *See* 2016 License Agreement, Dkt. 36-1; 2017 License Agreement, Dkt. 36-2.

9.      Until 2018, Defendants did not invoice Glamour Dolls for artwork until after the artwork was created.  *See* Email from Shannon McPhillips to Peter Georgotas, dated September 4, 2017, Bates labeled, Deposition Exhibit No. 50.

10.      Defendants admitted in communications with Glamour Dolls that they did not provide the Wengie Pallet artwork despite having received the die-lines needed for the artwork.  *See* Defendants' Exhibit 8; Email chain between David Evered and Nicholas Rosenberg, starting October 8, 2018, Glamour Dolls' Exhibit 6.

11.      Pursuant to the 2016 Agreement, Defendants were expected to approve or reject the artwork design for products before pre-production samples were created.  *See* 2016 License Agreement, Dkt. 36-1, ¶¶ 3-4.

12.      The reason for this timing was to ensure that the any artwork changes that needed to be made were done before time and money was spent creating pre-production

1    samples. *See* Deposition of Peter Georgotas, Volume II (August 24, 2023), Glamour

2    Dolls' Exhibit 5, pgs. 648:8-649:9.

3        13.    In April 2017, Defendants sent Glamour Dolls approved artwork for a single

4    eyeshadow and bronzer so that preproduction samples could be made. *See* Deposition of

5    Peter Georgotas, Volume II (August 24, 2023), Glamour Dolls' Exhibit 5, pgs. 589:10-14;

6    Email from Shannon McPhillips to Peter Georgotas, dated September 4, 2017, Glamour

7    Dolls' Exhibit 12.

8        14.    More than one month later, however, after pre-production samples were

9    created, Defendants rescinded their approval of the artwork because they realized that the

10    artwork they provided did not include their copyright information. *See* Deposition of Peter

11    Georgotas, Volume II (August 24, 2023), Glamour Dolls' Exhibit 5, pgs. 589:10-14,

12    648:8-649:9; Email chain between Shana Urban, Peter Georgotas, Laura Crawford and

13    Liss Frank, starting date April 27, 2017, Glamour Dolls' Exhibit 13; Email from Laura

14    Crawford to Charon Chin and Lisa Frank, dated June 9, 2017, Glamour Dolls' Exhibit 23.

15        15.    Due to Defendants' failure to provide accurate, timely feedback, Glamour

16    Dolls had to push back its production schedule so that new samples could be created for

17    approval. *See* Deposition of Peter Georgotas, Volume II (August 24, 2023), Glamour

18    Dolls' Exhibit 5, pgs. 648:8-649:9.

19        16.    This mistake was also costly to Glamour Dolls as Defendants charged it for

20    Defendants' artist to correct the artwork. *See* Email chain between Laura Crawford and

21    Lisa Frank, starting June 14, 2017, Glamour Dolls' Exhibit 25.

22        17.    Just as the 2016 Agreement required Defendants to provide timely feedback,

23    it also required Defendants to justify its reasons for rejecting any product. *See* 2016

24    License Agreement, Dkt. 36-1, ¶ 4.

25        18.    In June 2017, Defendants rejected the samples and required resampling

26    because "the sticker on the bottom should have been artwork that [Defendants] supplied to

27    [Glamour Dolls]." *See* Defendants' Exhibit 14, pg. LFI0003865.

28        19.    Defendants did not state that the sticker on the bottom of the packaging

1  contained incorrect information or was not on brand.  *See* Defendants' Exhibit 14, pg.

2  LFI0003865.

3      20.    Defendants' only reason for rejecting the sticker was because it was not

4  created by Defendants.  *See* Defendants' Exhibit 14, pg. LFI0003865.

5      21.    As a direct consequence of Defendants' rejection, the production of the

6  eyeshadow and bronzer was delayed, and Glamour Dolls had to pay for Defendants to

7  create new stickers.  *See* Email chain between Laura Crawford and Lisa Frank, starting

8  June 14, 2017, Glamour Dolls' Exhibit 25.

9      22.    The intention and spirit of the License Agreements were for Glamour Dolls

10  and Defendants to collaboration on the creation and sell Lisa Frank x Glamour Dolls

11  makeup products.  *See* 2017 License Agreement, Dkt. 36-2; Defendants' Exhibit 2.

12      23.    Defendants threatened to stop performing pursuant to the 2016 Agreement

13  unless Glamour Dolls agreed to pay them a twenty percent (20%) royalty percentage

14  instead of the previously agreed upon fifteen percent (15%).  *See* Email from Shannon

15  McPhillips to Janice Ross, dated May 12, 2018, Glamour Dolls' Exhibit 7, pg. LFI

16  0006940 ("We told GD that we could not move forward with Indiegogo or any other

17  campaigns unless they agreed to add the 20% term to their contract."); Addendum to June

18  6, 2016, Licensing Agreement, Glamour Dolls' Exhibit 16.

19      24.    Defendants arbitrarily decided the amount it charged Glamour Dolls for

20  artwork and charging "premium fees.  *See* Email chain between Laura Crawford and Lisa

21  Frank, starting June 14, 2017, Glamour Dolls' Exhibit 25; Email chain between Sharon

22  Chin, Shannon McPhillips, and Lisa Frank, starting date March 13, 2018, Glamour Dolls'

23  Exhibit 21; April 28, 2018, email from Shannon McPhillips to Janice Ross and Lisa Frank,

24  Glamour Dolls' Exhibit 38; April 5, 2018, artwork fee invoice, Glamour Dolls' Exhibit 32.

25      25.    Defendants charged Glamour Dolls for artwork fees incurred due to mistakes

26  made by Defendants' own artists.  *See* Email chain between Laura Crawford and Lisa

27  Frank, starting June 14, 2017, Glamour Dolls' Exhibit 25.

28      26.    Defendants moved Glamour Dolls' logo to the bottom of product packaging

1    where it would be less likely to be seen without consulting Glamour Dolls on the change.
2    *See* Email chain between Laura Crawford, Shannon McPhillips, and Lisa Frank, starting
3    June 8, 2017, Glamour Dolls' Exhibit 22.

4        27.    Defendants refused to provide artwork or feedback until after artwork
5    invoices were paid, despite previously providing artwork and invoices at the same time.
6    *See* Email from Shannon McPhillips to Peter Georgotas dated May 8, 2018, Glamour
7    Dolls' Exhibit 9; Email from Shannon McPhillips to Peter Georgotas, dated September 4,
8    2017, Glamour Dolls' Exhibit 12.

9        28.    Defendants decided to change the Wengiecorn pallet artwork after the
10    artwork had been completed and paid for by Glamour Dolls even though this change
11    would delay production and require Glamour Dolls to pay additional artist fees for the new
12    art.  *See* Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls'
13    Exhibit 4, pg. 241:1-20; Email chain between David Evered and Nicholas Rosenberg,
14    starting October 8, 2018, Glamour Dolls' Exhibit 6.

15        29.    Defendants rejected the pre-production sample of a "Lippie Tin" lip balm
16    because Defendants did not like the color that had already been selected by the Kickstarter
17    backers.  *See* Deposition of Janice Ross, Volume II (October 25, 2023), Glamour Dolls'
18    Exhibit 1, pgs. 94:2-4, 96:23-97:6; Email from Janice Ross to Lisa Frank and Shannon
19    McPhillips, dated June 7, 2018, Glamour Dolls' Exhibit 20; Email chain between Chanel
20    Cohn, Janice Ross, Shannon McPhillips, Peter Georgotas, and Lisa Frank, starting date
21    Jaune 14, 2018, Glamour Dolls' Exhibit 24.

22        30.    Defendants rejected the pre-production sample of the Vegan Leather Make-
23    Up Bag that had already been approved and purchased by Kickstarter backers who wanted
24    a leather-looking bag, because Defendants preferred a "shiny plastic" bag.  *See* Deposition
25    of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 161:1-17; 165:2-18,
26    168:14-169:2; Email from Janice Ross to Lisa Frank and Shannon McPhillips, dated June
27    7, 2018, Glamour Dolls' Exhibit 20; Email chain between Chanel Cohn, Janice Ross,
28    Shannon McPhillips, Peter Georgotas, and Lisa Frank, starting date Jaune 14, 2018,

1  Glamour Dolls' Exhibit 24.

2      31.    Defendants encouraged Hot Topic, a third-party retailer, to cancel purchase

3  orders it had with Glamour Dolls.  *See* Deposition of Peter Georgotas, Volume 1 (August

4  23, 2013), Glamour Dolls' Exhibit 4, pg. 172:13-25; Email chain between Mandy

5  Bardisbanian and Peter Georgotas, starting October 3, 2017, Glamour Dolls' Exhibit 11;

6  Email chain between Janice Ross, Mandy Bardisbanian, and Robin Motts, dated June 20,

7  2018, Glamour Dolls' Exhibit 29.

8      32.    Defendants refused to communicate with Glamour Dolls until after Glamour

9  Dolls made a $125,000 royalty payment.  *See* Email chain between Janice Ross and Peter

10  Georgotas, starting June 15, 2018, Glamour Dolls' Exhibit 10; emails from Chanel Cohn to

11  Janice Ross, Shannon McPhillips, Peter Georgotas, and Lisa Frank, first dated June 18,

12  2018, Glamour Dolls' Exhibit 30.

13      33.    Defendants waited until after Glamour Dolls made a $125,000 royalty

14  payment before improperly terminating the 2017 License Agreement.  *See* Deposition of

15  Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 260:14-23;

16  Email chain between Janice Ross and Peter Georgotas, starting June 15, 2018, Glamour

17  Dolls' Exhibit 10; emails from Chanel Cohn to Janice Ross, Shannon McPhillips, Peter

18  Georgotas, and Lisa Frank, first dated June 18, 2018, Glamour Dolls' Exhibit 30.

19      34.    Defendants anticipated Glamour Dolls' sales to exceed $2,500,000 in 2018,

20  which is why they demanded a minimum royalty payment of $500,000.  *See* Deposition of

21  Laura Crawford (October 17, 2023), Glamour Dolls' Exhibit 3, pgs. 45:23-47:1.

22      35.    Nordstrom wanted to sell Lisa Frank x Glamour Dolls products, including

23  products designed exclusively for it.  *See* Deposition of Laura Crawford (October 17,

24  2023), Glamour Dolls' Exhibit 3, pgs. 74:21-75:19.

25      36.    Ulta Beauty wanted to do a Christmas campaign with Lisa Frank x Glamour

26  Dolls products.  *See* Deposition of Laura Crawford (October 17, 2023), Glamour Dolls'

27  Exhibit 3, pgs. 74:21-75:19.

28      37.    Hot Topic anticipated selling Lisa Frank x Glamour Dolls products in a

1  nationwide campaign once the Kickstarter campaign products had been completed and had

2  already begun placing small orders.  *See* Deposition of Laura Crawford (October 17,

3  2023), Glamour Dolls' Exhibit 3, pgs. 72:11-16; May 18, 2017, email between Peter

4  Georgotas, Laura Crawford, and Lisa Frank, Glamour Dolls' Exhibit 31.

5       38.    The Agreements are service agreements in which Glamour Dolls was the

6  party seeking Defendants' services in exchange for monetary compensation.  *See* 2017

7  License Agreement, Dkt. 36-2.

8       39.    Glamour Dolls paid Defendants $701,308.73 in royalties.  *See* Defendants'

9  Exhibit 27; Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs.

10  31:7-14.

11      40.    Ms. Frank is the President of LFI and only voting shareholder.  *See*

12  Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 181:23-

13  182:22.

14      41.    Glamour Dolls made royalty payments to LFI knowing that Ms. Frank would

15  personally be heavily involved in the collaboration.  *See* Deposition of Peter Georgotas,

16  Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 155:15-25, 349:15-23.

17      42.    In Fall/Winter 2020, Defendants launched a new makeup collaboration with

18  a company called Morphe, and Insider Inc. published an article (the "Article") that

19  discussed the new collaboration.  *See* Insider Article, Dkt. 12-3.

20      43.    The Article interviewed several consumers who were encouraging a boycott

21  of the new collaboration based their dissatisfaction with LFI's failure to deliver on the Lisa

22  Frank x Glamour Dolls make up collaboration.  *See* Insider Article, Dkt. 12-3.

23      44.    To refute these allegations, an LFI representative sent an email statement to

24  the Insider in which it blamed Glamour Dolls for the Lisa Frank x Glamour Dolls make up

25  collaboration failure and claimed that it never received what it was owed from Glamour

26  Dolls.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs.

27  217:15-218:3.

28      45.    In full, the published LFI Statement reads:

"Unfortunately, Glamour Dolls completely failed to live up to our agreement, which includes their obligations within the Kickstarter campaign, failing to manufacture and deliver the products that our fans rightfully deserved. … The Lisa Frank Company knows how you feel, as we did not receive what Glamour Dolls promised us either. After many months of pushing Glamour Dolls to live up to its contractual obligations and deliver products — to our fans and retailers that ordered products — Lisa Frank Inc. reached the point of exasperation, terminated the agreement with Glamour Dolls, and contacted the Federal Government. … To say we are disappointed by the events that transpired as a result of this license is an understatement."  *See* Insider Article, Dkt. 12-3, pg. 8.

46.    The Article was published as a news article by a reputable publication in which LFI responded to allegations regarding a prior cosmetic line.  *See* Insider Article, Dkt. 12-3.

47.    The Article was not a blog post or personal interview in which one would expect statements to be more opinion driven.  *See* Insider Article, Dkt. 12-3.

48.    The specific language of the LFI Statement is neither figurative nor hyperbolic.  *See* Insider Article, Dkt. 12-3, pg. 8.

49.    The "sting" of the LFI Statement is that Glamour Dolls was a poor business partner that decided not to fulfil its contractual obligations.  *See* Insider Article, Dkt. 12-3, pg. 8.

50.    LFI received $326,308.73 pursuant to the 2016 Agreement, including 20% of the Kickstarter campaign proceeds.  *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 12; Defendants' Exhibit 27; Email from Laura Crawford to Lisa Frank, dated February 1, 2018, Glamour Dolls' Exhibit 8.

51.    LFI received $375,000 pursuant to the 2017 Agreement.  *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 12; Defendants' Exhibit 27.

52.    From the start of the 2016 License Agreement until the day LFI terminated the 2017 License Agreement, Glamour Dolls tried to get collaboration products designed, manufactured, and into the hands of consumers.  *See* Declaration of Lisa Frank,

Defendants' Exhibit 1, ¶ 6-7; Lisa Frank's Art Chart, Defendants' Exhibit 8 (Ms. Frank put together a chart to refer to her deposition of select, but not all of, the email communication between Glamour Dolls and Defendants. Even this self-serving chart shows that Glamour Dolls were trying to get collaboration products design, manufactured, and into the hands of consumer.).

53.    Production delays were also caused by Defendants' changes to artwork and products as well as by manufacturing errors.  *See* Defendants' Exhibit 8; Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 54:7-18 ("as Lisa started making a lot of changes to the samples and we had to pay more and more money to the factories to get new rounds of samples produced.").

54.    LFI prevented Glamour Dolls from performing when it terminated the Agreements and demanded that Glamour Dolls cease all work on the collection.  *See* Defendants' Termination Letter, Dkt. 36-3.

55.    Ms. Frank "mentioned" LFI's dispute with Glamour Dolls to an FBI agent who was in her office on an unrelated matter.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 223:16-236:3.

56.    LFI never reported Glamour Dolls.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 223:16-236:3.

57.    Defendants did not provide any documents to the agent or the "federal government," and nothing came of Ms. Frank's "mention" of Glamour Dolls to a random FBI agent.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 223:16-236:3.

58.    Defendants made the LFI Statement even though they were fully aware that Glamour Dolls had paid it $701,308.73.  *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 12; Defendants' Exhibit 27.

59.    Defendants made the LFI Statement even though they were fully aware that Defendants terminated the 2017 License Agreement.  *See* Defendants' Termination Letter, Dkt. 36-3.

1      60.    Defendants made the LFI Statement even though they were fully aware that

2 up until Defendants' termination of the 2017 License Agreement Glamour Dolls diligently

3 worked to design and manufacture collaboration products.  *See* Defendants' Exhibit 11.

4      61.    Defendants made the LFI Statement even though they were fully aware that

5 Defendants did not "contact the Federal Government" about Glamour Dolls.  *See*

6 Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 223:16-

7 236:3.

8      62.    This is not the first time that Defendants made false statements about

9 Glamour Dolls.  *See* Emails from Kickstarter to Laura Crawford containing new comments

10 posted on Kickstarter webpage, Glamour Dolls' Exhibits 26-28.

11      63.    Immediately after Defendants terminated 2017 Agreement, they wrote to

12 various consumers who had paid for and not received Lisa Frank x Glamour Dolls

13 products through a Kickstarter campaign and alleged that Defendants were neither

14 involved in the campaign nor received a royalty from the Kickstarter proceeds.  *See*

15 Defendants' Termination Letter, Dkt. 36-3; Emails from Kickstarter to Laura Crawford

16 containing new comments posted on Kickstarter webpage, Glamour Dolls' Exhibits 213-

17 215.

18      64.    Defendants received $63,000, twenty percent of the proceeds from the

19 Kickstarter campaign.  *See* Invoices attached to email from Shannon McPhillips to Janice

20 Ross, dated May 12, 2018, Glamour Dolls' Exhibit 8.

21      65.    Defendants attended numerous meetings to strategize the creation of the

22 campaign.  *See* Email chain between Laura Crawford, Peter Georgotas, Lisa Frank, and

23 Jessica Romano, starting date November 28, 2016, Glamour Dolls' Exhibit 17; Email

24 chain between Laura Crawford, Jon Leland, Peter Georgotas, and Lisa Frank, starting date

25 January 11, 2017, Glamour Dolls' Exhibit 18.

26      66.    Defendants were involved in the marketing and publicity of the campaign.

27 *See* Email from Laura Crawford to Peter Georgotas, dated January 27, 2017, Glamour

28 Dolls' Exhibit 19.

67.     Defendants had collaborator credentials on the Kickstarter campaign webpage and posted messages to the campaign backers (which they did). *See* Emails from Kickstarter to Laura Crawford containing Project Updates posted by Lisa Frank, Glamour Dolls' Exhibits 33, 34, and 36.

68.     Defendants even alleged in an internal email that the Kickstarter campaign would not have happened at all without their involvement. *See* Email from Shannon McPhillips to Janice Ross, dated May 12, 2018, Glamour Dolls' Exhibit 7, pg. LFI 0006939-40 ("Anything that looks good on the campaign was done by LF."), ("Lisa also went to Kickstarter with Peter who were also big LF fans. Peter needed Lisa to meet with these company because he couldn't sell them on his own."), ("GD asks LF to answer interview questions for the Kickstarter campaign, create a banner for the Kickstarter website, and approve all the copy.").

69.     As of 2023, Ms. Frank and her son are the two shareholders of LFI and Ms. Frank owns all the voting shares of LFI. *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 181:23-182:4.

70.     Prior to 2023, Ms. Frank owned all the shares of LFI. *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 182:14-22.

71.     Ms. Frank and her son are the only officers of LFI. *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 182:23-16.

72.     Ms. Frank is the president of LFI. *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 2; Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 183:5-7.

73.     Ms. Frank intermingles work and personal trips. *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 196:11-197:3; 197:7-198:14, 198:15-200:3.

74.     Ms. Frank made all substantial company decisions. *See* Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 29:19-30:2, 155:15-25, 168:14-22; Deposition of Janice Ross, Volume II (October 25, 2023), Glamour

Dolls' Exhibit 1, pgs. 54:6-55:16.

75.    Ms. Frank ran the company out of her residence.  *See* Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 177:1-19.

76.    LFI employees do personal tasks for Ms. Frank.  *See* Email chain between Peter Georgotas, Janice Ross, and Matt Kibildis, starting date May 18, 2018, Glamour Dolls' Exhibit 15; The 2016-2018 text message history between Peter Georgotas and Shannon McPhillips; Glamour Dolls' Exhibit 37.

77.    Ms. Frank is involved in all of LFI's day-to-day activities and decision and is also the ultimate decision maker.  *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 3; Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 29:19-30:2, 168:14-22; Deposition of Janice Ross, Volume II (October 25, 2023), Glamour Dolls' Exhibit 1, pgs. 54:6-55:16.

78.    Ms. Frank also makes decisions based on her personal feelings even if they are not necessarily the best for the business.  *See* Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 155:15-25 ("And when I say "Lisa" and "LFI," for me they're interchangeable. She was operating as the -- she was the only consistent person for us."); Deposition of Lisa Frank (October 18, 2023), Glamour Dolls' Exhibit 2, pgs. 192:1-193:6.

79.    Every action taken by LFI against Glamour Dolls was done with Ms. Frank's knowledge, if not at her specific instruction.  *See* Declaration of Lisa Frank, Defendants' Exhibit 1, ¶ 3; Deposition of Peter Georgotas, Volume 1 (August 23, 2013), Glamour Dolls' Exhibit 4, pg. 29:19-30:2; Deposition of Janice Ross, Volume II (October 25, 2023), Glamour Dolls' Exhibit 1, pgs. 54:6-55:16.

80.    The 2017 Agreement provides in relevant part that a party seeking to terminate for breach must first provide written notice of the alleged breach and give the other party 20 days to cure.  *See* 2017 License Agreement, Dkt. 36-2, ¶ 9-10.

81.    LFI never sent Glamour Dolls a written notice of breach prior to terminating the 2017 License Agreement.  *See* Deposition of Janice Ross, Volume II (October 25,

2023), 176:2-21, 201:4-15, 202:10-21; Deposition of Laura Crawford (October 17, 2023), Glamour Dolls' Exhibit 3, pgs. 94:2-7.

82.   LFI stated in the termination letter that Glamour Dolls failed to use best efforts to exploit the license by failing to develop multiple product lines and by seeking orders from multiple retailers.  *See* Defendants' Termination Letter, Dkt. 36-3.

83.   LFI admitted in deposition that both of allegations were not true.  *See* Deposition of Laura Crawford (October 17, 2023), Glamour Dolls' Exhibit 3, pgs. 71:14-73:5, 74:21-75:19, 92:13-93:11.

84.   Glamour Dolls was in talks with Ulta Beauty, Nordstrom, Amazon, Hot Topic, and others about selling products, including exclusive items.  *See* Deposition of Laura Crawford (October 17, 2023), Glamour Dolls' Exhibit 3, pgs. 71:14-73:5, 74:21-75:19, 92:13-93:11; Email chain between Peter Georgotas, Laura Crawford, and Lisa Frank, starting date November 17, 2017, Glamour Dolls' Exhibit 14.

85.   LFI had told Glamour Dolls not to secure additional orders until after the Kickstarter campaign was complete.  *See* Deposition of Janice Ross, Volume II (October 25, 2023), Glamour Dolls' Exhibit 1, pgs. 139:15-25.

86.   The Termination Letter also claimed that Glamour Dolls breached Section 8.4 of the Agreement and damaged LFI's brand.  *See* Defendants' Termination Letter, Dkt. 36-3.

87.   These alleged breaches do not fall within the Agreement's definition of a material breach.  *See* 2017 License Agreement, Dkt. 36-2, ¶ 9-10.

88.   Glamour Dolls' alleged failures to seek pre-production approval occurred prior to the execution of the 2017 Agreement.  *See* Defendants' Exhibits 8, 30.

89.   Glamour Dolls' final royalty payment to LFI did not become due until four days after LFI terminated the 2017 Agreement.  *See* 2017 License Agreement, Dkt. 36-2, ¶ 5.

90.   On June 22, 2018, Defendants told Glamour Dolls that it would provide product feedback after Glamour Dolls made the one hundred twenty-five thousand dollar

($125,000) June 2018 royalty payment, even though Defendants knew at the time that they intended to terminate the 2017 License Agreement as soon as the payment was made. Email chain between Janice Ross and Peter Georgotas, starting June 15, 2018, Glamour Dolls' Exhibit 10; Email chain between Janice Ross, Mandy Bardisbanian, and Robin Motts, dated June 20, 2018, Glamour Dolls' Exhibit 29; *See* Deposition of Janice Ross, Volume II (October 25, 2023), Glamour Dolls' Exhibit 1, pgs. 296:13-297:8.

91.    On June 20, 2018, Defendants informed Hot Topic that it needed to move away from Glamour Dolls and had been having conversations with a new manufacturing partner. Email chain between Janice Ross, Mandy Bardisbanian, and Robin Motts, dated June 20, 2018, Glamour Dolls' Exhibit 29.

92.    But for Defendants' false statement, Glamour Dolls would not have made the $125,000 June 2018 royalty payment. Email chain between Janice Ross and Peter Georgotas, starting June 15, 2018, Glamour Dolls' Exhibit 10.

Dated: December 5, 2023                NOLAN HEIMANN LLP

By:    _____/s/ Jordan Susman_____
          Jordan Susman