1  Laura Sixkiller, SBN 022014
   laura.sixkiller@gtlaw.com
2  Shalayne L. Pillar, SBN 034066
   shalayne.pillar@gtlaw.com
3  GREENBERG TRAURIG, LLP
   2375 E. Camelback Road, Suite 800
4  Phoenix, AZ 85016
   Tel: (602) 445-8000
5  Fax: (602) 445-8100
6
7  *Attorneys for Defendants/Counterclaimant*
   *Lisa Frank, Inc. and Lisa Frank*
8
9
10            **UNITED STATES DISTRICT COURT**
11         **IN AND FOR THE DISTRICT OF ARIZONA**
12

| | |
|---|---|
| 13  Glamour Dolls, Inc., | Case No. 4:21-CV-0228-TUC-SHR |
| 14                     Plaintiff, | |
| 15  v. | **DEFENDANTS'/COUNTER-CLAIMANT'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| 16  Lisa Frank, Inc.; and Lisa Frank, in her individual and corporate capacity, | |
| 17                     Defendants. | |
| 18 | |
| 19 | **(Oral Argument Requested)** |
| 20  Lisa Frank, Inc., | |
| 21                     Counterclaimant, | |
| 22  v. | |
| 23  Glamour Dolls, Inc., | |
| 24                     Counterdefendant. | |
| 25 | |

26
27
28

ACTIVE 692321193v1

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1    Plaintiff fails to identify evidence sufficient to preclude summary judgment in LFI and

2    Ms. Frank's favor on all of Plaintiff's claims. None of Plaintiff's 38 additional exhibits show, for

3    example, any evidence (much less evidence sufficient to create a material issue of fact) of

4    Defendants' intent not to perform (fraud); Defendants' failure to perform (breach of contract);

5    Defendant's wrongful deprivation of Plaintiff's benefit of the bargain (breach of the implied

6    covenant); Plaintiff's "reasonably certain" damages (breach of the implied covenant and fraud);

7    or Defendants' failure to act reasonably (defamation). Indeed, Plaintiff does not oppose dismissal

8    of its false advertising, trade liable and tortious interference claims. [*See* Plf.'s Resp. (Doc. 93).]

9    Neither does Plaintiff identify any evidence to avoid summary judgment on LFI's claim

10   that Plaintiff breached the Second Agreement by not paying the final royalty payment. Plaintiff's

11   argument—that payment was not due until four days *after* the Agreement's termination—is

12   unsupported. [*See* Doc. 12-2 § 5.2(i) ("If this Agreement ends or is terminated for any reason

13   before the Term expires, all monies owed by Licensee to LFI, including any unpaid Royalty

14   under Section 6, shall become immediately due and payable.").][1]

15   The Court should grant Defendants' summary judgment motion (Doc. 89) in its entirety.

16   **I.        PLAINTIFF'S CLAIMS REMAIN UNSUPPORTED.**

17   To defend against a summary judgment motion, Plaintiff bears the burden of identifying

18   a triable issue: courts are not obligated to "scour the record in search of a genuine issue of triable

19   fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Plaintiff must instead identify "with

20   reasonable particularity the evidence that precludes summary judgment." *Id*.

21   Plaintiff does not meet this burden. After <u>not disputing</u> large swaths of Defendants'

22   Statement of Facts ("**DSOF**"[2]), Plaintiff argues 96 "*additional*" facts ("**PSOF**") establish a

23   genuine issue of fact. But the PSOF largely duplicates Defendants' facts and the handful of new

24   "facts" do not withstand scrutiny; many more are simply red herrings. For example, Plaintiff

25   argues the Agreements rendered "Defendants" liable; but Plaintiff does not dispute DSOF ¶¶ 5

---

26   [1] Capitalized terms not defined herein have the same meaning as those set forth in Defendants'
     summary judgment motion (Doc. 89).

27

28   [2] "DSOF" refers to both the Defendants Statement of Facts (Doc. 90) and Plaintiff's Responses
     (Doc. 94).

1

and 20 establishing that Ms. Frank was not a party to the Agreements. In its PSOF, Plaintiff cites only the Agreements, which lack *any* references to Ms. Frank personally. [*See, e.g.*, PSOF ¶¶ 1–6, 11, 17, 38.] Defendants' overstated facts carry throughout and only undermine the very purpose behind the Local Rules—they do not create factual issues. *See* LRCiv. 56.1(b).

### A.     The undisputed facts support summary judgment on Counts Six–Eight.

Plaintiff abandoned its false advertising, trade libel, and tortious interference claims by failing to present any argument or defense of these claims. [*See generally*, Doc. 93.] Notably, Plaintiff *does not dispute* a single fact asserted by Defendants as to those claims. [*See* DSOF ¶¶ 73–82.] The Court should thus dismiss Counts Six, Seven, and Eight. *See Bailey v. P.B. Bell Asset Mgmt. Inc.*, 2020 WL 6680364, *9 (D. Ariz. Nov. 12, 2020) ("A party abandons claims by not raising them in opposition to a motion for summary judgment.").

### B.     No reasonable juror could find "fraud."

Plaintiff argues enough evidence exists to support its fraud claim because "Defendants told [Plaintiff] it would provide product feedback" after Plaintiff made its quarterly guaranteed minimum royalty payment, even though Defendants "knew at the time they intended to terminate." [Doc. 93 at 16.[3]] Plaintiff argues that *but for* Defendants' statement, Plaintiff would not have paid the royalty. [*Id.*]

A close review of the evidence does not support Plaintiff's claims. Plaintiff's Ex. 10, for example, states only that as of Friday, June 22, LFI sought to schedule a call once it confirmed payment (due that day, given bank closures[4]). Plaintiff's evidence also unequivocally establishes the recommendation to terminate had not even come up at LFI until well after this, "at the very end of June, July 1st timeframe." [Plf.'s Ex. 1 at 295:11–16 (Doc. 94-2 at 27).] Plaintiff's reliance on Ex. 29 to infer an earlier plan to terminate is misplaced. That email exchange does not reference termination, nor does it support the statement that LFI *told* Hot Topic it "needed to move away"; only that LFI's "initial thoughts" included recommending such move.[5] Plaintiff's

---

[3] Citations to the docket refer to the court-stamped docket page numbers.

[4] Plaintiff does not dispute the payment was due June 22 and was paid June 28. [DSOF ¶ 52.]

[5] Plaintiff's failure to provide Hot Topic any update for over six months suggests Plaintiff's actions, not Defendants', precipitated the cancellation. [*See* Plf.'s Ex. 11 (Doc. 94-3 at 2).]

ACTIVE 692321193v1

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

"but for" claim is similarly thin as the Second Agreement unequivocally required payment with or without termination. [*See* 12-2 § 5.2(i).]

Unlike Plaintiff's "facts," the facts Defendants rely upon remain undisputed: Plaintiff does not dispute that Plaintiff could not provide "any additional details as to what Ms. Ross or Ms. Frank represented, or *when* those representations were made"; Plaintiff does not know what Defendants intended; and there is "no documentary evidence" of the harm Plaintiff allegedly suffered relying on the alleged misstatements. [*See* DSOF ¶¶ 53–60.] Plaintiff's fraud claim cannot stand considering these undisputed facts, and the dearth of supportive evidence. *See Sw. Non-Profit Hous. Corp. v. Nowak*, 322 P.3d 204, 212 (Ariz. App. 2014) (granting summary judgment when plaintiff failed to establish it took any action based on defendant's statements).

### C.     Plaintiff's narrowed breach of contract claim still fails.

Plaintiff's Response substantially narrows the scope of its breach of contract claim. For one, Plaintiff admits that Ms. Frank was not a contracting party and offers only the Agreements in support of its claim that either contract required action by Ms. Frank, even though neither refers to Ms. Frank. [DSOF ¶¶ 5, 20; PSOF ¶¶ 1–6, 11, 17, 38.] Because Plaintiff fails to support its alter ego claim (*see infra*, Section II), this claim should be dismissed against Ms. Frank in its entirety. As for LFI, Plaintiff significantly narrows the scope of the breaches it is pursuing in the face of Defendants' evidence. [*See, e.g.*, DSOF ¶¶ 35–36, 41–44, 49, 51–52.] Still, the evidence fails to show a triable issue.

#### 1.     There is no evidence LFI owed Plaintiff "Wengie" artwork[6].

Plaintiff claims Defendants "admit" they "never provided" the Wengie pallet artwork. [Doc. 93 at 3.] But Plaintiff's cited evidence lacks any such "admission"; to the contrary, Defendants' Ex. 8 shows that on July 26, 2017 "LFI sen[t] artwork for all 3 [palettes]." [Doc. 90-2 at 104–05.] Plaintiff also does not dispute the content of Plaintiff's own PowerPoint Presentation, showing the Wengie pallet artwork and "no action items" for LFI for the product. [*See* DSOF ¶ 37 Defs.' Ex. 6 (Doc. 90-2 at 54).] This PowerPoint also notes that, as of May 21,

---

[6] This is the only product for which Plaintiff disputes LFI provided artwork. [*See* Doc. 93 at 3.] The Court should summarily dismiss this claim as to any other product for the reasons stated in Defendants' motion for summary judgment.

3

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

2018, Plaintiff was sourcing new colors "to complement the artwork," and that, LFI was waiting on updated die lines "for the updated Wengie palette *size*." [*Id.* (emphasis added).] Plaintiff does not explain how it planned to source colors to complement artwork "never provided"—a point conceded in Plaintiff's later argument that Defendants *changed* the artwork "after the artwork had been completed and paid for by [Plaintiff.]" [Doc. 93 at 6:8–10.]

While some evidence points to discussion regarding a potential "change" to the completed Wengie artwork, the undisputed evidence, including Plaintiff's PowerPoint, shows that change was never pursued. Summary judgment on this breach theory is warranted.

### 2.    Plaintiff does not dispute LFI reviewed the June 2017 samples.

Plaintiff's Response does not even focus on an item that required review, per its second breach theory. [Doc. 93 at 3.] Plaintiff instead argues that in *April* 2017, Defendants sent approved artwork for the single eyeshadow and bronzer, only to later withdraw their approval. [*Id.*] But Plaintiff admits the only samples at issue are those submitted in June 2017, and that LFI reviewed those samples. [DSOF ¶ 34, 40–42.]

In any event, Plaintiff's cited evidence falls flat. Plaintiff's Ex. 13 does not show any "recission" of approval, either of Preproduction samples or artwork—only that, in April 2017, the labels at issue were "mislabeled." [Doc. 94-3 ("It looks like the labels that [LFI] did a couple of weeks ago were mislabeled. The leopard label obviously goes with leopard box. The hearts go with the eye.").] Plaintiff's Ex. 23 also lacks evidence of Defendants' "recission" (and discusses Preproduction *samples*, not artwork, as alleged). Plaintiff's attempt to muddy the issue by arguing *Defendants* caused the rejection by omitting LFI's copyright is unsupported[7] and again, immaterial to whether LFI reviewed the samples. [*See* DSOF ¶ 41.] Plaintiff's deposition testimony—that LFI never provided approval following the addition of copyright information— is also refuted by the record. [*See, e.g.*, Defs.' Ex. 12 (Doc. 90-3 at 7 (sending Plaintiff product packaging, displaying trademark and copyright information, as of June 16, 2017).] It is not disputed that Plaintiff shipped these products, and that shipment required LFI's approval. [*See*

---

[7] Plaintiff's cited evidence establishes only that, between May 5 and June 14, 2017, LFI provided revised packaging files, and that, LFI planned to bill Defendants for time spent on the revisions. [Doc. 94-4 at 13.] It does not support Plaintiff's claim that Defendants *caused* the revisions. [*Id.*]

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

*ACTIVE 692321193v1*

1   DSOF ¶¶ 13, 14; Plf.'s Ex. 6 (Doc. 94-2 at 150) (Plaintiff notes the single eyeshadow and bronzer

2   are "[f]inished, approved, and shipped to [Kickstarter] backers. Artwork since revised by

3   [Plaintiff], to be sent to [LFI] for approval").] Plaintiff's claimed production delays are also defied

4   by its own documents. [*See* Defs.' Ex. 19 (Doc. 90-3 at 30–31) ("There was an issue with the

5   bac[k] sticker on the product . . . But don't worry, this won't affect our delivery schedule at all.").]

6      Plaintiff's inability to confront the entire record does not create a factual issue and

7   summary judgment on this breach, too is warranted.

8   <center>**3.      Plaintiff overstates the evidence of LFI's "lack of justification."**</center>

9      Plaintiff claims Defendants did not justify its rejection of the June 2017 Preproduction

10   eyeshadow and bronzer samples because they did not state whether the sticker on these products

11   contained incorrect information or was not "on-brand," only that, Defendants had not created the

12   sticker. [Doc. 93 at 4.] This breach theory, like the other two, is plainly unsupported: in fact,

13   Plaintiff does not dispute that the same day LFI received the samples, it "emailed Plaintiff

14   enumerating its reasons for not yet approving the samples." [DSOF ¶ 44.] Defendants' Ex. 14

15   confirms that several reasons were given for LFI's disapproval, one of which was the failure to

16   have LFI prepare the packaging sticker. [*See* Doc. 90-3 at 16 (admitted at DSOF ¶ 44).]

17   Regardless, whether LFI required the sticker to display LFI's artwork is immaterial and

18   completely within LFI's discretion. [*See* DSOF ¶¶ 10–12 (admitting the First Agreement

19   required Plaintiff to obtain LFI's written approval of all design elements and artwork).]

20      Plaintiff's "facts" are neither probative nor supported. Considering the record, no

21   reasonable juror could find "breach," and summary judgment on Count One is proper.

22   <center>**D.      <u>No reasonable juror could find for Plaintiff on its implied covenant claim.</u>**</center>

23      Plaintiff claims, without support[8], that the "intention and spirit" of the Agreements "were

24   for Defendants to collaborate on the creation and selling of Lisa Frank x Glamour Dolls makeup

25   products." [Doc. 93 at 5–6.] Plaintiff argues Defendants violated that intention, citing 12

26   purported actions. [*Id*.] Notwithstanding that Plaintiff's bulleted list extends *far beyond* its

---

27   [8] Contrary to Plaintiff's spin, the Agreements only granted Plaintiff "a license to manufacture,
    use and sell" products incorporating LFI's Artwork and/or Trademark, subject to LFI's approval.
28   There is no "collaboration" required. [*See e.g.*, Doc. 12-2 §§ 1, 4.]

<center>5</center>

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1    pleading (compare *id.* with DSOF ¶ 47[9]), a close review of Plaintiff's cited "facts" proves them

2    overstated and unsupported, and immaterial in any event.

3          As an example[10], Plaintiff claims Defendants threatened to "stop performing" under the

4    First Agreement unless Plaintiff agreed to a 20% royalty. [PSOF ¶ 23.] The language Plaintiff

5    quotes belies this story. [*Id.*] LFI said only that it "could not move forward" with new campaigns

6    falling outside the First Agreement's approved distribution channels (i.e., Indiegogo) absent an

7    agreement on a royalty rate. [Doc 12-1 § 4.2.] Plaintiff's Ex. 7 demonstrates only LFI's desire to

8    negotiate a different fee for campaigns outside the parties' contract. In another example, Plaintiff

9    claims LFI refused to provide artwork or feedback until after artwork invoices were paid, despite

10   previously providing artwork and invoices at the same time. [PSOF ¶ 27.] Nowhere in Plaintiff's

11   cited evidence does Plaintiff establish any such prior practice; in fact, other evidence submitted

12   by Plaintiff shows it *prepaid* for a certain amount of artwork, which is why it received

13   contemporaneous invoices and artwork. [*See* Plf.'s Ex. 25 (Doc. 94-4 at 13) ("The last time that

14   Peter wired an advance for artwork was May 5[.]").]

15         This is not the only breach theory that improperly seeks to rewrite the Agreements.

16   Plaintiff, for example, challenges LFI's rejection of Preproduction samples of a vegan makeup

17   bag and lip balm because Kickstarter backers had already approved certain mockups. [PSOF

18   ¶¶ 29, 30.] To start, the Second Agreement expressly limited the "Licensed Territory," to exclude

19   Kickstarter. [Doc. 12-2 §§ 1.1, 2.1.] The Second Agreement also permitted LFI to reject

20   Preproduction samples to ensure all products were "on brand" with LFI. [DSOF ¶ 24 (undisputed

21   that "Plaintiff's licensing rights were at all times conditioned upon LFI's express approval").]

22   Further, Plaintiff's own evidence shows LFI was willing to compromise on the color of the lip

---

[9] Plaintiffs argue its implied covenant claim is not duplicative of its breach of contract claim because "Defendants' conduct was done in bad faith[.]" [Doc. 93 at 5.] Plaintiff's legal point ignores that Plaintiff pleaded the same conduct for both claims. [*Compare* DSOF ¶¶ 35 and 47.] This portion of Plaintiff's implied covenant claim cannot stand. *See Ipro Tech LLC v. Sun W. Mortg. Co.*, 2019 U.S. Dist. LEXIS 48152, at *10 (D. Ariz. Mar. 21, 2019).

[10] Given page limitations, Defendants are unable to point out all the ways Plaintiff's 12 contentions fail to sustain Plaintiff's implied covenant claim. The many issues plaguing PSOF ¶¶ 12–21 are addressed in the breach of contract section, *supra*. For the remainder, Defendants urge the Court to carefully review the evidence cited in the PSOF and compare it to the DSOF and Plaintiff's responses.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

6

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1  balm (Plf.'s Exs. 20 and 24) and that, LFI rejected the vegan bag for reasons beyond the material

2  (Defs.' Ex. 14). [Docs. 94-3 at 46, 94-4 at 8, and 90-3 at 16.]

3       But even if Plaintiff's allegations were substantiated (they are not), the evidence still fails

4  to show Defendants acted in *bad faith* or *unfairly* to deprive Plaintiff of the contracts' benefit. *See*

5  *Ipro Tech*, 2019 U.S. Dist. LEXIS 48152, at \*10 (dismissing implied covenant claim because a

6  disagreement over defendant's contractual obligation, without evidence of bad faith, could not

7  establish breach).[11] At best, Plaintiff's evidence shows only that LFI exercised its contractual

8  rights, such as its right to approve or reject received samples in its discretion. [*See* DSOF ¶¶ 10–

9  16, 24.] Such actions do not establish breach of the implied covenant—a claim constrained, by

10  its very nature, to the same rights bargained for in the Agreements. *See Kuehn v. Stanley*, 91 P.3d

11  346, 354 (Ariz. App. 2004) ("As a general rule, an implied covenant of good faith and fair dealing

12  cannot directly contradict an express contract term. Accordingly, the relevant inquiry always will

13  focus on the contract itself, to determine what the parties did agree to."); *CMS Mech. Servs., LLC*

14  *v. PetSmart, Inc.*, 2018 WL 1586647, at \*\*14–15 (D. Ariz. Mar. 31, 2018) (finding contract did

15  not provide the benefits claimed; thus, defendants' discretion to not provide those benefits could

16  not breach the implied covenant).

17       Neither can Plaintiff demonstrate resulting damages. Although Plaintiff admits "***no***

18  ***documentary evidence***" was located regarding its alleged harm (DSOF ¶¶ 47, 59, 60[12]), Plaintiff

19  argues "expert testimony" could establish the exact sum of its lost profits. [Doc. 93 at 7.]

20  Plaintiff's argument is nonsensical: an expert cannot opine on matters without some evidentiary

21  basis. *See Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 831 (9th Cir. 2001) (expert

22  testimony inadmissible where an affidavit unsupported by underlying facts and made estimates

23  of damage based on assumptions); *Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1263 (9th

24  Cir. 1981) (jury's damage award unsupported because plaintiff's economic expert lacked

25  evidentiary basis); *IceMOS Tech. Corp. v. Omron Corp.*, 2019 U.S. Dist. LEXIS 196610, at \*36

---

26  [11] Plaintiff's assertion that Defendants improperly require "bad intent or malice" misses the

27  point: Plaintiff, *not Defendants*, argued Defendants breached "by entering into the Agreements without an intent to fulfill its obligations" and by "acting with malice." [DSOF ¶ 47.]

28  [12] Emphasis added.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1  (D. Ariz. Nov. 13, 2019) (dismissing claim for lost profits because experts' opinions were "laden

2  with assumptions, and [p]laintiff has failed to connect any quantifiable data to its projections of

3  lost profits"). Plaintiff's admission that there is ***no evidence*** of any purchase orders, payments to

4  expedite samples, warehouse or logistical fees paid, promotional activities undertaken, or loans

5  obtained by Plaintiff, ends this claim: no rational jury could find Defendants' actions proximately

6  caused Plaintiff *any* harm, with *any* reasonable certainty. *See Waesche v. Embry-Riddle*

7  *Aeronautical Univ. Inc.*, 2023 U.S. Dist. LEXIS 175077, at \*15 (D. Ariz. Sep. 29, 2023)

8  ("Without evidence of actual damage, [plaintiff] fails to establish a prima facie claim for breach

9  of the covenant of good faith and fair dealing.").[13]

10  **E.      No evidence supports Plaintiff's unjust enrichment claim.**

11  Plaintiff asserts it is not barred from bringing an unjust enrichment claim against LFI

12  because the Court rejected the argument at the pleading stage; and against Ms. Frank because

13  "she was not a gratuitous beneficiary of the monies [Plaintiff] paid to LFI." [Doc. 93 at 8–9.]

14  Plaintiff's arguments are flawed as to both Defendants.

15  As to LFI, Plaintiff ignores the procedural distinction posed by summary judgment. Given

16  the undisputed facts, Plaintiff can *no longer* maintain a claim for unjust enrichment, as LFI

17  conceded the validity of the Agreements, and Plaintiff seeks the same damages as its breach of

18  contract claim. *See Little v. Grand Canyon Univ.*, 2023 U.S. Dist. LEXIS 146666, at \*19 (D.

19  Ariz. Aug. 21, 2023) (granting summary judgment claim on plaintiff's unjust enrichment claim

20  once defendants "conceded the existence of valid contracts related to all plaintiff's claims" and

21  "all unjust enrichment claims sought damages from the same rights and obligations as the contract

22  claims."). [*Compare to* DSOF ¶¶ 4, 19, 61.]

23  As to Ms. Frank, Plaintiff misstates the central holding of *Freeman v. Sorchych*: that for

24  any award to be based on unjust enrichment, Plaintiff must show that the benefit was not intended

---

25  [13] Plaintiff's final rebuttal—that it is not limited to contract damages—is also unsupported, as
26  there is no evidence of the necessary "special relationship" for tort damages. *See McAlister v.*
*Citybank*, 829 P.2d 1253, 1259 (Ariz. App. 1992) ("Such a relationship is characterized either
by a fiduciary relationship, elements of public interest (e.g., unequal bargaining positions), or
27  adhesion," and finding none); *Rawlings v. Apodaca*, 726 P.2d 565, 575 (Ariz. 1986) (permitting
tort actions "[w]hen dealing with an innkeeper, a common carrier, a lawyer, a doctor or an
28  insurer, the client/customer seeks service, . . . or some other intangible.").

to be conferred gratuitously. 245 P.3d 927 (Ariz. App. 2011). But nowhere does Plaintiff argue it did "not intend" to benefit Ms. Frank. To the contrary, Plaintiff argues Plaintiff "made royalty payments to LFI knowing that Ms. Frank would personally be heavily involved in the collaboration." [PSOF ¶ 41.] And Plaintiff still fails to show a connection between any enrichment received by Ms. Frank and the impoverishment experienced by Plaintiff. Plaintiff's claim thus fails. *See, e.g.*, *Eisen v. Coonfer*, 2023 Ariz. App. Unpub. LEXIS 164, at *11 (Feb. 16, 2023) (dismissing unjust enrichment claim because plaintiff could not connect decision to lend money to a third party to *defendant's* alleged enrichment).

### F.    For defamation, Plaintiff cannot show a triable issue.

Although Plaintiff fails to present a triable issue on several elements necessary to its defamation claim (*see* Doc. 89 at 11–13), the most damning remains "fault." On this, Plaintiff contends Defendants made the statement even though they were fully aware of four facts (i–iv). [*See* Doc. 93 at 13; DSOF ¶ 66.] Plaintiff's argument is misplaced: a careful review of Plaintiff's cited evidence fails to establish Defendants failed to act "reasonably in attempting to discover the truth or falsity or the defamatory character of the publication[.]" *Best W. Int'l, Inc. v. Furber*, 2008 U.S. Dist. LEXIS 70552, at *20–21 (D. Ariz. Sep. 5, 2008).

(i) <u>Plaintiff paid LFI $701,308.73</u>: Plaintiff's payment, and Defendants' knowledge of that payment, does not contradict the Article (nor the fact that Plaintiff never paid the final minimum royalty payment). [*See* DSOF ¶¶ 65, 70.] Fact (i) also lacks any bearing on Defendants' negligence.

(ii) <u>Defendants terminated the Second Agreement</u>: Defendants' termination neither contradicts the Article, nor holds any relation to Defendants' attempt to determine the falsity of its statements. [*See id.* at ¶ 65 ("[LFI] terminated the agreement[.]").]

(iii) <u>Up until Defendants' termination, Plaintiff diligently worked to design and manufacture collaboration products</u>: This statement is unsupported, as Plaintiff cites only one email with a potential distributor, six months before termination. [*See* Plf.'s Ex. 11 (Doc. 94-3 at 2.] Moreover, it is *undisputed* that Plaintiff did not manufacture and deliver every order (DSOF ¶ 67); failed to deliver every product promised to retailers (*id.* ¶ 68); never sent LFI the contractually required pre-shipment samples for the Heartthrob eyeshadow (*id.* ¶ 59)—issues all noted by LFI in the Article. [*Id.* ¶ 64.] Fact (iii) also lacks relation to Defendants' attempt to discover the truth of its statements.

(iv) <u>Defendants did not contact the Federal Government</u>: Plaintiffs are splitting hairs: it is undisputed that LFI spoke with an FBI agent about Plaintiff. [*See* Defs.' Ex. 9 at 233:16–234:16 (Doc. 90-2 at 128–129) ("A: And so we called

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

9

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

the FBI [about another matter] . . . we also told them about this situation, and they said that they were going to try and help us."); *see also id.* at 234:17–21.] Given that the "gist" of LFI's statement is true (and suggests nothing as to Defendants' investigation into the truth), Fact (iv) similarly fails to establish Defendants' fault. *See Lundin v. Discovery Communs. Inc.*, 352 F. Supp. 3d 949, 961 (D. Ariz. 2018).

Plaintiff also suggests Defendants' fault is evidenced by prior statements. [Doc. 93 at 13.] This is a red herring: Plaintiff admits its defamation claim is limited to the statements made to Insider. [*See* Plf.'s Resp. to DSOF ¶ 66 ("[Plaintiff's] defamation claim is based on Defendants' publication of the statement to Insider, 'knowing such statements would be published to the public at large.'").] A comparison of the Article and the prior statements show no overlap. [*Compare* DSOF ¶ 65 *with* PSOF ¶¶ 62–68.] Again, the question is not whether Defendants proved they did *not* act with negligence, but whether Plaintiff presented sufficient evidence that Defendants *did*. *See Best W. Int'l*, 2008 U.S. Dist. LEXIS 70552, at *20–21. And because Plaintiff did not do so, its defamation claim fails as a matter of law.

## II.     NO JURY COULD FIND LISA FRANK PERSONALLY LIABLE.

Plaintiff argues Ms. Frank should be personally liable because the evidence shows a "unity of control" between Ms. Frank and LFI. [Doc. 93 at 14–15.] In support, Plaintiff cites Ms. Frank's ownership and extensive involvement in LFI's affairs. [*Id.*] This is not enough.[14] *See Ferrarell v. Robinson*, 465 P.2d 610, 613 (Ariz. App. 1970) ("The evidence would have to show that the corporation was not only influenced and governed by [defendant], but that there was also such a unity of interest and ownership that the individuality or separateness of [defendant] and the corporation had ceased to exist."). Notably, Plaintiff admits that LFI instructed Plaintiff to deposit all payments to the LFI account, which Plaintiff did. [DSOF ¶ 89.] *Compare to Ferrarell*, 465 P.2d at 613 (refusing to find an alter ego when plaintiff deposited funds into the corporation's checking account and lacked evidence that the officers never intended to use the funds as contemplated).[15]

---

[14] In any event, Ms. Frank has since submitted corrections to her testimony, on this topic.

[15] It is also not enough that Ms. Frank co-mingled some business and personal aspects of her life, nor that she permitted LFI to work out of her residence for a period. [PSOF ¶¶ 73, 75, 76.] *See Dietel v. Day*, 492 P.2d 455, 458 (Ariz. App. 1972) (absent evidence of fraud, mingling of funds, or unity of interests between the corporate president and the corporation, the president could not be held personally liable); *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 730 (Ariz.

*ACTIVE 692321193v1*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1    Plaintiff also states that it would be unfair to allow Ms. Frank to escape liability given her

2 involvement. [Doc. 93 at 15.] But there is no evidence LFI tricked Plaintiff into thinking it was

3 dealing with Ms. Frank, rather than LFI, nor that Ms. Frank is improperly sheltering LFI's assets.

4 [*See* DSOF ¶¶ 5, 20, 89.] Thus, Plaintiff cannot show that observance of the corporate form would

5 sanction a fraud. *Compare to Taeger v. Cath. Fam. & Cmty. Servs.*, 995 P.2d 721, 735 (Ariz.

6 App. 1999) (no fraud in absence of confusion over relationship); *Gatecliff v. Great Republic Life*

7 *Ins. Co.*, 821 P.2d 725, 729 (Ariz. 1991) (noting corporation's communications bore the wrong

8 logo and failed to redirect plaintiffs to the correct entity, frustrating plaintiff's efforts to protect

9 their rights before suit) (both cited by Plaintiff).

10    **III.    THERE IS NO DISPUTE: PLAINTIFF OWED AND DID NOT PAY.**

11    Plaintiff argues that its nonpayment "cannot be considered a breach" because the payment

12 did not become due "until after LFI terminated the [Second Agreement]." [Doc. 93 at 17.] This

13 is incorrect. [*See* Doc. 12-2 § 5.2(i).] There is also no genuine dispute that Plaintiff did not make

14 this payment. [DSOF ¶ 70.]

15    Plaintiff tries to excuse its nonpayment by arguing LFI first breached by not providing

16 written notice (an affirmative defense *not* pleaded *see* Plf.'s Answer (Doc. 42.). [Doc. 93 at 17.]

17 Plaintiff's argument ignores its other, undisputed breaches. [DSOF ¶¶ 49, 50 (admitting it paid

18 the first installment of the minimum royalty on May 3, when it was due on March 24); *id.* ¶¶ 67–

19 69 (admitting it did not deliver all Kickstarter orders, failed to deliver some products to Hot Topic,

20 and shipped an eyeshadow without sending the required samples). Considering the evidence,

21 summary judgment on LFI's narrow claim—that Plaintiff failed to remit the minimum royalty—

22 should be granted.

23    **IV.    CONCLUSION**

24    The Court should grant Defendants'/Counterclaimant's Motion for Summary Judgment

25 and dismiss Plaintiff's/Counterdefendant's claims in their entirety, and grant summary judgment

26 as to LFI's claim of breach of the Second Agreement for failing to pay the minimum royalty.

27

28 App. 1978) (refusing to find alter ego even upon payment to related "family practice" given
   appellee "knew she was dealing with a corporation").

*ACTIVE 692321193v1*

1    DATED this 19th day of December 2023.

2                                          GREENBERG TRAURIG, LLP

3                                          By:*/s/ Laura Sixkiller*
                                                Laura Sixkiller
4                                               Shalayne L. Pillar
                                                *Attorneys for Defendant/Counterclaimant Lisa*
5                                               *Frank, Inc. and Lisa Frank*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

12

*ACTIVE 692321193v1*