1  **WO**

2

3

4

5

6  # IN THE UNITED STATES DISTRICT COURT

7  ## FOR THE DISTRICT OF ARIZONA

8

9  | Glamour Dolls Incorporated, | No. CV-21-00228-TUC-SHR |

10 | Plaintiff, | **Order Re: Defendants' Motion for Summary Judgment** |

11 | v. | |

12 | Lisa Frank Incorporated, et al., | |

13 | Defendants. | |

14

15

16  Pending before the Court is Defendants Lisa Frank and Lisa Frank, Inc.'s ("LFI")

17  (collectively, the "Defendants") Motion for Summary Judgment ("Motion").  (Doc. 89 at

18  1.)[1]  The Motion has been fully briefed.  (Docs. 89, 93, 95.)  For the reasons stated below,

19  the Court grants the motion in part and denies it in part.[2]

20  ## I. BACKGROUND

21  Unless otherwise noted, the following facts are undisputed and taken from the

22  parties' statements of facts.

23

24  _____

25  [1]Page numbers refer to the blue court stamped numbers at the top of the pages unless the citation involves non-email exhibits in the parties' Statement of Facts.

26  [2]Although Defendants requested oral argument (Doc. 89 at 1; Doc. 95 at 1), the Court declines because oral argument will not aid in resolution of the issues raised.  *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."); Fed. R. Civ. P. 78; *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) ("[A] district court can decide the issue without oral argument if the parties can submit their papers to the court."); *see also Bach v. Teton Cnty. Idaho*, 207 F. App'x 766, 769 (9th Cir. 2006) ("Due process does not require the district court to hold oral argument before ruling on pending motions.")

### A. **Parties**

Plaintiff Glamour Dolls, Inc. ("GDI") is a vegan cosmetics company and LFI is a company that develops products, colors, and designs.  (DSOF ¶ 3; PCSOF ¶ 3; Doc. 28 ¶¶ 1–2, 6.)[3]  According to GDI, it typically entered into profit-sharing agreements whereby it would agree to handle manufacturing and distribution while the other partner or licensor would agree to develop products, colors, and designs.  (DSOF ¶ 3; PCSOF ¶ 3; Doc. 90, Ex. 2.)  Defendant Lisa Frank ("Frank") is the President and CEO of LFI (PCSOF ¶ 40; Doc. 90, Ex. 1 ¶ 2) and Peter Georgotas is one of the founders of GDI (Doc. 90 Ex. 29 ¶ 6).

### B. **First Agreement**

In June 2016, GDI and LFI entered into a License Agreement ("First Agreement") whereby LFI granted GDI a "non-exclusive, non-transferable, non-assignable license to manufacture, use and sell" certain products utilizing "LFI's Artwork and/or Trademarks" in a certain territory.  (DSOF ¶¶ 4, 6; PCSOF ¶¶ 4, 6; Doc. 36-1 § 1.1.)  GDI agreed to pay LFI a royalty of 15% of net sales of Licensed Products accruing at the time of sale and a guaranteed minimum royalty ("GMR") of $100,000.  (DSOF ¶ 8; PCSOF ¶ 8; Doc. 36-1 §§ 6.1, 6.2, 6.4.)  GDI's licensing rights were at all times conditioned upon LFI's express approval.  (DSOF ¶ 10; PCSOF ¶ 10; Doc. 36-1 §§ 8.2, 8.3.)

After receiving approval, GDI needed to submit "Preproduction Samples" to LFI before manufacturing any Licensed Product (DSOF ¶ 12; PCSOF ¶ 12; Doc. 36-1 § 8.2) and "Pre-Shipment Samples" before shipping any Licensed Product (DSOF ¶ 13; PCSOF ¶ 13; Doc. 36-1 § 8.2).  LFI had sole discretion to reject these two types of samples.  (DSOF ¶¶ 12–13; PCSOF ¶¶ 12–13; Doc. 36-1 § 8.2.)  After GDI began regular manufacturing, it needed to provide a third round of samples ("Manufactured Samples") and GDI needed to approve the packaging and displays before the products could be shipped to customers.  (DSOF ¶ 14; PCSOF ¶ 14; Doc. 36-1 § 8.2.)

---

[3]DSOF is Defendants' Statement of Facts and PCSOF is Plaintiff's Controverting Statement of Facts.  DSOF is docketed at item 90 in the electronic record (Doc. 90); PCSOF is docketed at item 94 (*See* Doc. 94 at 2–10).

C. **Second Agreement**

Near the end of the First Agreement,[4] GDI and LFI entered into another License Agreement ("Second Agreement").  (DSOF ¶ 19; PCSOF ¶ 19; Doc. 36-2 at 16.)  The terms of the Second Agreement were mostly identical to the terms of First Agreement.  (DSOF ¶ 19; PCSOF ¶ 19; *Compare* Doc. 36-1, *with* Doc. 36-2.)  For the Second Agreement, GDI agreed to pay an additional 20% royalty on sales made by GDI directly to retail customers and a GMR of $500,000.  (DSOF ¶ 22; PCSOF ¶ 22; Doc. 36-2 §§ 6.1– 6.2.)  The Second Agreement also removed the Pre-Shipment sample approval process contained in the First Agreement.  (DSOF ¶ 25; PCSOF ¶ 25; *Compare* Doc.   36-1 § 8.2(a), *with* Doc. 36-2 § 8.3(a).)  On July 25, 2018, LFI sent GDI a letter stating they were terminating the Second Agreement.  (DSOF ¶ 27; PCSOF ¶ 27.)

D. **Lawsuit**

On May 17, 2021, GDI filed this lawsuit.  (Doc. 1.)  In December 2021, GDI filed its First Amended Complaint ("FAC") against Defendants, asserting nine claims: (1) breach of contract, (2) breach of duty of good faith and fair dealing, (3) fraud, (4) unjust enrichment, (5) business defamation, (6) false advertising in violation of the Federal Lanham Act, 15 U.S.C. § 1125, et seq., (7) trade libel/product disparagement/injurious falsehood, (8) tortious interference with business expectations, and (9) liability for the torts, breaches, and debts of defendant LFI/piercing the corporate veil.  (Doc. 28 at 17–33.)  In January 2022, Defendants filed a Motion to Dismiss for Failure to State a Claim (Doc. 31) and in June 2022 they filed a counterclaim for breach of contract and breach of implied covenant of good faith and fair dealing (Doc. 36).  The Court granted in part and denied in part Defendants' Motion to Dismiss.  (Doc. 41.)  After the close of discovery, Defendants filed this Motion.  (Doc. 89.)

**II. MOTION FOR SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[4]The First Agreement ended on December 31, 2017 and the Second Agreement was executed on December 14, 2017.  *Compare* Doc. 36-1 § 5.1, *with* Doc. 36-2 at 2, 16.

of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255 (citations omitted).

The summary judgment standard operates differently depending on whether the moving or non-moving party has the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  When the movant bears the burden of proof on a claim at trial, the movant "must establish 'beyond controversy every essential element'" of the claim based on the undisputed material facts.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  If the movant fails to make this showing, summary judgment is inappropriate, even if the non-moving party has not introduced contradictory evidence in response.  Conversely, when the non-movant bears the burden of proof on a claim at trial, the movant may prevail either by citing evidence negating an essential element of the non-movant's claim or by showing the non-movant's proffered evidence is insufficient to establish an essential element of the non-movant's claim.  *See Celotex*, 477 U.S. at 322–23; 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. 2022).

### III. DISCUSSION

#### A. Breach of Contract (Count One)

##### 1. Parties' Arguments

Defendants argue they are entitled to summary judgment because GDI has no evidence to support the three breaches remaining at issue: (1) failure to provide artwork; (2) failure to timely review June 2017 samples; and (3) failure to specify the reason for disapproving GDI's June 2017 samples.[5]

. . . .

---

[5]All three alleged breaches pertain to the First Agreement only.

- 4 -

## 2. Analysis

The parties agree Arizona law governs GDI's breach-of-contract claims.  Under Arizona law, "the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Mehlschau v. Costco Wholesale Corp.*, 634 F. Supp. 3d 658, 663 (D. Ariz. 2022) (quoting *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004)).  "[I]nterpretation of a contract is generally a matter of law." *Powell v. Washburn*, 125 P.3d 373, 375 (Ariz. 2006).  "A party breaches a contract when it 'fail[s], without legal excuse, to perform any promise which forms the whole or part of a contract.'" *IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1185 (D. Ariz. 2019) (quoting *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 210 (Ariz. 1986)).  Whether a party has breached a contract is a question of fact for the jury to resolve.  *See Great W. Bank v. LJC Dev., Ltd. Liab. Co.*, 362 P.3d 1037, 1045 (Ariz. Ct. App. 2015).

### a.  Complete Failure to Provide Artwork

GDI alleges Defendants breached their contract by "[c]ompletely failing to provide artwork for several products . . . ."  (Doc. 28 ¶ 78(a).)  It is undisputed GDI identified 14 products at issue for this claim during discovery:

> (1) a "Cat Eyeliner"; (2) a "Matte Mousse"; (3–5) three pal[]et[te]s ("Wengie," "Bold and Bright," and "Naturally Glam"); (6) a "Unicorn Lippie"; (7) a lip-gloss or lip-balm tin; (8) a vegan cosmetic bag; (9) nail polish; (10) an agenda or notebook set; (11) a set of makeup brushes; (12) a pencil set; (13) a second makeup bag; and (14) a "Face Chart Coloring Book."

(DSOF ¶ 35; PCSOF ¶ 35; Doc. 90, Ex. 3 (Plf.'s Resp. to Interrog. No. 6).)

LFI argues it created artwork for "at least eight of the 14 products at issue" and "the remaining six products were not yet at a stage where LFI had to provide artwork."  (Doc. 89 at 3–4.)  GDI responds "Defendants admit that they never provided [it] with artwork for an eye shadow Palette referred to as the 'Wengie Palette.'"  (Doc. 93 at 3.)  In their Reply, LFI argues the Court should only focus on the Wengie Palette because GDI has provided no evidence to support it failed to provide artwork for other products.  (Doc. 95 at n.6.)

1  LFI also argues the evidence shows LFI provided artwork for the Wengie Palette.  (Doc.

2  95 at 5.)   According to LFI, "[w]hile some evidence points to discussion regarding a

3  potential 'change' to the completed Wengie [Palette] artwork, the undisputed evidence,

4  including [GDI]'s PowerPoint, shows that change was never pursued."  (*Id.*)

5  It is undisputed artwork was created for products one through eight (DSOF ¶¶ 36–

6  37; PCSOF ¶¶ 36–37) and products ten through fourteen were "part of a 'potential'

7  collection" that never launched.  (DSOF ¶ 39; PCSOF ¶ 39.)  Therefore, the Court will

8  grant Defendants summary judgment on all products except product nine, the Wengie

9  Palette.

10  Regarding the Wengie Palette, GDI focuses on disputing whether LFI breached the

11  contract by failing to provide *finished* artwork for the product.  GDI points to a series of

12  emails from October and November 2018 between David Evered (counsel for LFI) and

13  Nicholas Rosenberg (counsel for GDI).  (Doc. 93 at 3 (citing Doc. 94, Ex. 6.).)  In the

14  emails, Evered and Rosenberg indicated their respective position regarding the Wengie

15  Palette artwork.

16  GDI stated:

17  > LF[I] has never sent finished artwork for this product.  They
18  > did previously send "rainbow unicorn" artwork, which GD[I]
19  > has the artwork files for, but at one point LF[I] said they no
   > longer wanted to use that artwork. Please note: the revised
20  > dielines mentioned above also apply to this product.

21  (Doc. 94-2 at 156.)

22  LFI stated:

23  > On 4/15/2018 GD[I] stated that they were sourcing new colors
   > for this product.  LFI has never received the new colors from
24  > GD[I], and therefore LFI could not complete the artwork.  LFI
   > suggests that GD[I] provide the new colors as soon as possible
25  > for the purposes of resolving the Kickstarter matter.

26  (*Id.*)

27  Contrary to GDI's assertion, this email chain does not establish Defendants *admitted*

28  they "completely fail[ed] to provide artwork" for the Wengie Palette.  However, this

1    evidence shows there is a genuine dispute as to whether LFI's behavior can amount to a

2    breach of contract. *See Great W. Bank*, 362 P.3d at 1045 (noting breach is question for

3    jury to solve). Because Plaintiff has raised a genuine dispute of material fact, the Court

4    will deny summary judgment as to product nine. Because it its undisputed Frank was not

5    a party to this contract, the breach of contract claim will be dismissed against her.[6]

6                        *b. Failing to Timely Review Samples*

7        GDI alleges Defendants breached § 8.2(d) of the First Agreement by "[f]ailing to

8    review samples in a timely manner, despite receiving countless written notices from

9    [P]laintiff." (Doc. 28 ¶78(b); *see also* Doc. 28 ¶¶ 23, 32, 44.) It is undisputed only three

10   samples are at issue related to this claim—"one shade of the Travel Bronzer" and "two

11   shades of the Single Eyeshadow"—sent by GDI in June 2017 for LFI's review.[7] (DSOF

12   ¶ 40; PCSOF ¶ 40; Doc. 90 Ex. 3, Plf.'s Resp. to Interrog. No. 7.)

13       Defendants argue GDI "never sent any contractual written notice to LFI, which it

14   was obligated to do if LFI failed to review the June 2017 samples" and, in any event, the

15   evidence shows LFI reviewed the three samples at issue in June 2017. (Doc. 89 at 4.) GDI

16   asserts "[i]n April 2017, Defendants sent [GDI] approved artwork for a single eyeshadow

17   and bronzer so that preproduction samples could be made" and "[m]ore than one month

18   later, however, after pre-production samples were created, *Defendants rescinded their*

19   *approval of the artwork* because they realized that the artwork *they provided* did not

20   include their copyright information." (Doc. 93 at 3–4.) According to GDI this constitutes

21   a "failure to provide accurate, timely feedback" under § 8.2(d). (*Id.* at 4.)

22       Section 8.2(d) of the First Agreement states:

23           If LFI does not fully approve in writing samples submitted
             under this Section within ten (10) business days after receipt,
24           Licensee may send LFI a notice at the address provided in
             Section 18 demanding that LFI either approve or disapprove
25           the samples. Licensee may not manufacture or sell or offer for

26

27   _____
     [6]The Court will separately address the alter ego analysis below.
28   [7]At the motion to dismiss stage, the Court limited Plaintiff's claim to June 2017
     samples (Doc. 41), and Plaintiff never requested leave to amend the First Amended
     Complaint to include any period outside of June 2017.

1
2

> sale any Licensed Product without approval by LFI as set forth herein.  All disapprovals shall be specific as to reason.

3   (Doc. 36-1 § 8.2(d).)

4        It is undisputed GDI's CEO admitted it never sent notice to LFI in accordance with
5   the Agreement and he is unaware of anyone else sending any such notice.  (DSOF ¶ 42;
6   PCSOF ¶ 42; Doc. 90, Ex. 7 at 72:2–7, 77:4–21.)  This fact alone dooms GDI's breach-of-
7   contract claim related to § 8.2(d) because that paragraph is conditioned on GDI sending
8   notice to LFI.  Furthermore, it is also undisputed "LFI reviewed Preproduction samples of
9   the Travel Bronzer and two shades of single eyeshadow on June 16, 2017."  (DSOF ¶ 41;
10  PCSOF ¶ 41.)  Accordingly, GDI's argument related to the rescinding of artwork approval
11  is nonsensical and Defendants are entitled to summary judgment on this claim.

12              *c.  Failing to Specify Reasons for Disapproval*

13        GDI alleges Defendants breached § 8.2(d) of the First Agreement by failing to
14  specify the reason for disapproving GDI's samples.  (Doc. 28 ¶¶ 45, 78(c).)  The parties
15  agree the samples at issue were received by LFI on June 7, 2017, and that same day "LFI
16  emailed [GDI] enumerating its reasons for not yet approving the samples— e.g., the sticker
17  on the bottom of the eyeshadow lacked the artwork supplied by LFI to [GDI] and the
18  bronzer was 'too green.'"  (DSOF ¶ 44; PCSOF ¶ 44; *see also* Doc. 90 Ex. 3, Plf.'s Resp.
19  to Interrog. No. 7; Doc. 90 Exs. 8, 13.)  Defendants argue "no contractual written notice
20  was sent to LFI about an alleged failure to specify reasons for disapproval" and LFI
21  provided GDI feedback the day the samples were received.  (Doc. 89 at 4.)  GDI asserts in
22  June 2017 "Defendants rejected the eyeshadow and bronzer pre-production samples, and
23  demanded resampling because 'the sticker on the bottom should have been artwork that
24  [Defendants] supplied to [GDI].'"  (Doc. 93 at 4 (alterations in original).)  According to
25  GDI, "Defendants breached their obligations" because "Defendants did not state that the
26  sticker contained incorrect information or was not on-brand."  (*Id.*)

27        Again, the failure to provide contractual notice dooms GDI's breach-of-contract
28  claim related to § 8.2(d) because that paragraph is conditioned on GDI sending notice to

LFI.  Furthermore, it is undisputed GDI provided specific reasons for disapproval.  GDI simply appears unsatisfied with the reasons provided by LFI.  Therefore, the Court will grant summary judgment in favor of Defendants on this claim.

## B. **Breach of Duty of Good Faith and Fair Dealing (Count Two)**

In the FAC, GDI alleges Defendants breached the duty of good faith and fair dealing in six different ways: (1) "[e]ntering into [the] agreements without an intent to fulfill the terms and obligations established by same; (2) "[f]ailing to provide artwork"; (3) "[r]efusing to receive samples for review"; (4) "[d]emanding early payment of guaranteed royalties, knowing it would immediately cancel the contract after receipt of payment"; (5) "[e]xercising its contractual rights in a predatory manner, which deprived [GDI] of the benefit of its bargain, and acting with malice or reckless disregard for [GDI]'s rights"; and (6) "[i]ntentionally stalling and delaying the production process in an effort to prevent GDI from obtaining the contractual benefits to which they had already availed themselves by doing, *inter alia*, the following:

> i. Frequently requesting last minute changes, which were unnecessary, costly and time consuming for [GDI];
>
> ii. Demanding that products be redesigned and remanufactured in a manner that did not conform to the votes of Kickstarter backers, despite previously agreeing to honor such votes and approving the prior samples thereof;
>
> iii. Demanding that Romano be removed from the project mid-way through;
>
> iv. Intentionally losing and misplacing various samples, on account of defendants LFI and Frank's lack of diligence and slacking off, which constitutes a judicially recognized type of bad faith.

(Doc. 28 at 19–20.)

### 1. **Parties' Arguments**

Defendants argue, among other things, they are entitled to summary judgment because "[n]o rational jury could return a verdict that Defendants' actions proximately caused [GDI] harm with any reasonable certainty."  (Doc. 89 at 6.)  Defendants also argue

GDI's "implied covenant claim is limited to contract damages" because GDI alleged "[t]he duty arises by virtue of a contractual relationship" and there is no special relationship here. (*Id.* at n.3.)

GDI asserts it is entitled to "consequential [contract] damages" because "it was reasonably foreseeable that Defendants' breaches would cause (and did cause) production delays and prevent [GDI] from obtaining purchase orders and selling products to retailers." (Doc. 93 at 7.)  According to GDI, "[a]lthough expert testimony is required to establish the exact sum of [GDI's] lost profits,[8] substantial evidence demonstrates that Defendants' actions prevented [GDI] from being able to sell products to interested mass retailers and department stores."  (Doc. 93 at 7–8.)  To support this, GDI cites the deposition of Laura Crawford in which she admitted the GMR increased between the First and Second Agreement because LFI anticipated GDI was going to increase its sales based on purchase orders GDI had.  (*Id.* at 7 (citing PASOF ¶ 34; *see also* Doc. 94 Ex. 3 at 45:23–47:1)[9].) GDI also points to portions of Crawford's deposition admitting LFI was aware of potential future business dealings with Nordstrom, Ulta Beauty, and Hot Topic.  (*Id.* (citing PASOF ¶¶ 35–36; *see also* Doc. 94, Ex. 3 at 72:11–16, 74:21–75:19).)  Lastly, GDI points to a May 18, 2017 email referencing Hot Topic's interest in placing purchase orders.  (*Id.* (citing PASOF ¶ 37; *see also* Doc. 94, Ex. 31).)

GDI asserts it can "bring an action in tort claiming damages for breach of the implied covenant of good faith" here because there is a special relationship between the parties.  (Doc. 93 at 8 (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 29 (Ariz. 2002)).)  GDI asserts it sought more than a commercial advantage or profit from Defendants because "the Agreements were service agreements in which [GDI] was the party seeking Defendants' services in exchange for monetary compensation."  (*Id.*)

In reply Defendants argue, it is undisputed there is no "documentary evidence" of a

---

[8]GDI apparently argues it can establish the exact sum of its lost profits with future expert testimony, yet no expert has been disclosed or even offered.  (Doc. 93 at 7.)
[9]PASOF is Plaintiff's Additional Statement of Facts.  PASOF is docketed at item 94 in the electronic record (Doc. 94 at 10–23.)

1    harm and Plaintiff offers no evidence of "any purchase orders, payments to expedite
2    samples, warehouse or logistical fees paid, promotional activities undertaken, or loans
3    obtained by [GDI]."  (Doc. 95 at 9.)  Defendants also argue expert testimony would be
4    improper here because "an expert cannot opine on matters without some evidentiary
5    support."  (*Id.* at 8.)

6                    **2.  Analysis**

7          A claim for breach of the implied covenant of good faith and fair dealing may give
8    rise to either contract damages or tort damages, with the latter requiring a "special
9    relationship."  *See Wells Fargo Bank*, 38 P.3d at 29 (explaining a "special relationship
10   between the parties aris[es] from elements of public interest, adhesion, and fiduciary
11   responsibility" (citation omitted)).

12         Here, GDI does not allege public interest, adhesion, or fiduciary responsibility.
13   Instead, GDI argues, without citation to any authority, that a services agreement is
14   sufficient to establish a special relationship.  The Court finds this argument unavailing and
15   concludes GDI cannot seek tort damages for this claim.

16         "When the remedy for breach of the covenant sounds in contract, it is not necessary
17   for the complaining party to establish a special relationship," *id.*, and "recovery [is limited]
18   to contract damages."  *See Burkons v. Ticor Title Ins. Co. of Cal.* 813 P.2d 710, 720 (Ariz.
19   1991).  The plaintiff must prove damages "with reasonable certainty" and must provide
20   evidence to serve as a "basis for estimating [its] loss."  *Gilmore v. Cohen*, 386 P.2d 81, 82
21   (Ariz. 1963); *see also Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 560 (Ariz. Ct. App.
22   1998) (noting the Court must find the plaintiff "sustained ascertainable, noncontingent, and
23   nonspeculative damages" to survive the summary judgment stage).  "The requirement of
24   'reasonable certainty' in establishing the amount of damages applies with added force
25   where a loss of future profits is alleged."  *Gilmore*, 386 P.2d at 82–83 (quoting *Isenberg v.
26   Lemon*, 327 P.2d 1016, 1023 (Ariz. 1958)).

27         In *Gilmore*, the Arizona Supreme Court affirmed the trial court's finding that the
28   plaintiff failed to provide a reasonable basis for damages in a precise enough manner in a

1     breach-of-contract case related to homebuilding.  *Id.* at 82–83.  The *Gilmore* Court found

2     there was not enough damage-related evidence where the evidence offered was all in the

3     form of weak testimony by the plaintiffs and plaintiffs offered "[n]o books of account",

4     "records of the costs," memoranda of previous transactions, or past income tax returns

5     showing profits.  *Id.* at 83.

6         Here, the record is devoid of evidence regarding damages.  The only evidence cited

7     by GDI establishes LFI was expecting GDI to do business with others and that a member

8     of the LFI organization might have seen purchase orders of some of these business

9     dealings.  (Doc. 94, Ex. 3 at 72:11–16, 74:21–75:19.)  However, it is undisputed GDI lacks

10     any documentary evidence to establish damages such as records of purchase orders,

11     invoices, or any other types of receipts.  (Doc. 94, Ex. 31.)  The content of the email cited

12     by GDI does not adequately establish how many products were expected to be ordered,

13     what types of products were going to be ordered, costs, fees, etc.  Furthermore, discovery

14     has closed and GDI does not name an expert who could offer testimony to support its

15     damages assertion.  Accordingly, the Court concludes GDI has offered no reasonable basis

16     or method to estimate its losses.  Therefore, the Court finds GDI has failed to establish lost

17     profits with reasonable certainty and Defendants are entitled to summary judgment on this

18     Count.[10]

19               **C. Fraud (Count Three)**

20                  **1. Parties' Arguments**

21         Defendants argue there is no evidence of their knowledge, intent, or "[GDI]'s

22     reliance or consequent injury."  (Doc. 89 at 7–9.)  GDI argues there is evidence to support

23     a fraud claim because "[o]n June 22, 2018, Defendants told [GDI they] would provide

24     product feedback after [GDI] made the . . . ($125,000) June 2018 royalty payment, even

25     though Defendants knew at the time that they intended to terminate the [Second]

26     Agreement as soon as the payment was made."  (Doc. 93 at 16.)  GDI asserts "[b]ut for

27     Defendants' false statement, [it] would not have made the . . . royalty payment."  (*Id.*)  GDI

28

---

[10]Because the issue of damages is dispositive, the Court will not address the other arguments made by the parties pertaining to Count Two.

cites three pieces of evidence to argue there is a genuine dispute over the fraud claim: (1) the June 15, 2018 email chain; (2) the June 20, 2018 email chain involving Hot Topic; and (3) the deposition of LFI Senior Vice President Janice Ross. (Doc. 93 at 16 (citing GDI's Exs. 1, 10, 29).)  In their Reply, Defendants argue "[n]o reasonable juror could find 'fraud'" because "the evidence [cited by GDI] does not support [GDI]'s claims."  (Doc. 95 at 3.)

### 2.   Analysis

To prove fraud under Arizona law, a plaintiff must establish: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) a consequent and proximate injury.  *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 (Ariz. Ct. App. 2014) (citation omitted).  "Fraud must be proven by clear and convincing evidence" and "doubtful, vague, speculative, or inconclusive evidence" will not suffice to establish fraud.  *See Enyart*, 985 P.2d at 562.

Here, GDI's FAC alleges Defendants made two false and material representations: (1) Ross's statement the Kickstarter products would be produced and distributed by June 2018; and (2) Defendants' "demand" that GDI make an early royalty payment, which, upon receipt Defendants would comply with their contractual obligations to provide artwork, accept samples for review, and resume communications with GDI.  (DSOF ¶ 53; PCSOF ¶ 53; Doc. 28 ¶ 86.)  During discovery, the only representation identified by GDI was "Lisa Frank and Janice Ross, LFI vice president, assured [GDI] that they would get LFI up to speed and organized in order [to] make sure product development would meet deadlines." (DSOF ¶ 54; PCSOF ¶ 54; Doc. 90 Ex. 3, Plf.'s Resp. to Interrog. No. 16.)  GDI indicated this occurred "before and during [GDI's] meeting with [Ross] in Los Angeles" which "occurred on May 14, 2018."  (DSOF ¶ 55; PCSOF ¶ 55; Doc. 90, Ex. 7 at 682:18–684:6; Doc. 90 Ex. 25.)  According to GDI, it relied on Defendants' statements by "continu[ing] to focus on development of LFI products"; "financ[ing] purchase orders received"; paying

to expedite sample production; developing additional products for LFI; paying warehouse and logistics fees for LFI products; continuing promotional activities; and taking out loans to cover the "business promises conveyed by LFI."  (DSOF ¶ 59; PCSOF ¶ 59; Doc. 90 Ex. 3, Plf.'s Resp. to Interrog. No. 18.)

For the first representation, the Court finds the May 14, 2018 statement involving Ross, and any similar statement before this, cannot serve as the basis for fraud because they occurred more than three years before this action was brought, *see* A.R.S. § 12-543(3) (three year statute of limitations for fraud), and GDI does not contest it discovered it was aggrieved at any time after May 14, 2018.[11]  (Doc. 93 at 16.)  Therefore, any such claim based on these statements is time barred.  Furthermore, even if a claim based on this representation was not time barred, GDI has not presented any evidence to establish Defendants made this statement with the "present intention not to perform" and the Court finds there is not enough circumstantial evidence in the record for GDI to meet the clear and convincing standard.  *See Enyart*, 985 P.2d at 562 ("Unfulfilled promises may form the basis for actionable fraud where made with the present intention not to         perform . . . .").

For the second representation, the Court will examine the three pieces of evidence cited by GDI.  First, the June 15, 2018 email chain between Ross and Georgotas includes statements showing Ross informed Georgotas when the June 2018 royalty payment was due and on June 22 Ross told Georgotas "[w]e can set up a call once we've confirmed receipt of the payment."  (Doc. 94, Ex. 10.).  It is undisputed the royalty payment was due on or before June 24 and LFI untimely received that payment on June 28.  (DSOF ¶ 52; PCSOF ¶ 52.)  After the payment was received, Ross sent Georgotas an email on June 29 stating "Are you available for a call next week.  I would like for you and I to touch base with you on the status of the business."  (Doc. 94, Ex. 10.)  Second, the June 20, 2018,

---

[11]Plaintiff does not respond to any of Defendants' arguments on this matter and because of that the Court may treat Defendants' facts as undisputed for purposes of summary judgment.  *See Finkle v. Ryan*, 174 F. Supp. 3d 1174, 1180–81 (D. Ariz. 2016) ("If a summary judgment motion is unopposed, Rule 56 authorizes the court to consider a fact as undisputed . . . .")

email chain involves a "beauty buyer at Hot Topic" asking Ms. Ross if "the partnership with [GDI] was going to be canceled" and Ms. Ross responding, on June 20, her "initial thoughts are we need to move away from [GDI]." (Doc. 94-4 Ex. 29.)  Third, the portion of the deposition cited by GDI shows Ms. Ross stated she had no recollection of recommending the licensing agreement be terminated prior to "the very end of June, July 1st timeframe." (Doc. 94, Ex. 1.)

None of the evidence referenced by GDI shows Defendants made a demand for an early royalty payment *in exchange* for contractual performance.  The evidence just shows Ross reminded GDI when she thought the royalty payment was due,[12] and Ross had concerns about their collaboration as of June 20, 2018.  None of the evidence presented suggests a promise to do something other than set up a phone call.  In fact, the evidence cited by GDI seems to establish no termination recommendation was made until after the emails referenced by GDI.

Furthermore, GDI admits it lacks any "documentary evidence" to show it: financed or issued any purchase orders, paid to expedite sample production, paid warehouse or logistic fees for LFI products, undertook promotional activities, or obtained loans during the relevant time period—May 24, 2018 through July 3, 2018.  (DSOF ¶ 60; PCSOF ¶ 60; Doc. 90 Ex. 1 ¶ 13, Ex. 7 at 711:3–8.)  Therefore, GDI offers insufficient evidence to demonstrate a genuine dispute of material fact that could lead a jury to conclude Defendants made the alleged fraudulent statements "knowing of [their] falsity or ignorance of [their] truth" or that GDI relied on this information in a manner that caused injury.  Therefore, the Court will grant Defendants summary judgment on this claim.

### D.  **Unjust Enrichment (Count Four)**

#### 1.  **Parties' Arguments**

Defendants argue this claim must be dismissed "to prevent double recovery" because GDI admits the Agreements "were valid, written contracts governing [GDI]'s use and sale of all Licensed Products" and GDI can "pursue an adequate remedy" via breach

---

[12]Ross told Georgotas that payment was due on Friday, June 22, 2018, because June 24, 2018, landed on a Sunday.

1   of contract.  (Doc. 89 at 10.)  Defendants argue GDI "cannot substantiate *its* claim to

2   compensation" against Frank because it cannot show "it was not intended or expected that

3   the services be rendered or the benefit conferred gratuitously, and that the benefit was not

4   conferred officiously."  (*Id.* (quoting *Freeman v. Sorchych*, 245 P.3d 927, 936–37 (Ariz.

5   Ct. App. 2011)).)

6        GDI asserts the approximately $700,000 it paid in royalties is "an unjust enrichment

7   because Defendants did not actually render the services [it] believed it was paying for."

8   (Doc. 93 at 8.)  According to GDI, "Defendants have proffered no new evidence to explain

9   why the Court should abandon its prior ruling" allowing the unjust enrichment claim to

10  move forward at the motion to dismiss stage.  (*Id.* at 9.)  Furthermore, GDI contends

11  Defendant Frank "was *not* a gratuitous beneficiary of the monies [it] paid to LFI."  (*Id.*)

12  GDI contends Defendant Frank benefits when LFI benefits because she "is the owner of

13  LFI and only voting shareholder."  (*Id.*)  GDI also asserts it made royalty payments to LFI

14  knowing Defendant Frank "would personally be heavily involved in the collaboration."

15  (*Id.*)

16                    **2.  Analysis**

17       Under Arizona law, an unjust enrichment claim requires a plaintiff to prove: "(1) an

18  enrichment, (2) an impoverishment, (3) a connection between the enrichment and

19  impoverishment, (4) the absence of justification for the enrichment and impoverishment,

20  and (5) the absence of a remedy provided by law."  *Freeman*, 245 P.3d at 936.  Moreover,

21  "the existence of a contract specifically governing the rights and obligations of each party

22  precludes recovery for unjust enrichment."  *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d

23  579, 584 (Ariz. Ct. App. 1986).

24       Here, GDI's argument about the court's prior ruling is unavailing and misinterprets

25  the procedural distinction posed by summary judgment.  At summary judgment, the

26  movant may prevail by showing the non-movant's proffered evidence is insufficient to

27  establish an essential element of the non-movant's claim.  *See Celotex*, 477 U.S. at 322–

28  23.  The only evidence GDI cites as support for the unjust enrichment claim is Defendant

LFI admits GDI paid it $701,308.73 in royalty payments.[13]  (Doc. 93 at 8.)  The Court fails to see how this evidence shows there is an unjust enrichment claim because these royalty payments arise from the contract and GDI does not offer any evidence showing how these contracts do not "govern the rights and obligations of each party."  Because GDI is seeking damages from the same rights and obligations as the contract claims, Defendant LFI is entitled to summary judgment for the unjust enrichment claim.

With respect to Defendant Frank, the Court finds GDI has not provided evidence to show "it was not intended or expected that the services be rendered or the benefit conferred gratuitously."  *Freeman*, 245 P.3d at 936–37.  In fact, the evidence GDI cites establishes the opposite (i.e., GDI knew Defendant Frank would benefit because of this contract with LFI).  Therefore, Defendant Frank is also entitled to summary judgment for the unjust enrichment claim.

### E.  Defamation (Count Five)

In November 2020, Insider Inc. published an article (the "Article") regarding LFI's collaboration with Morphe Cosmetics.  (DSOF ¶ 64; PCSOF ¶ 64; Doc. 12-3.)  The alleged defamatory material at issue in the case was published in the Article, made by an LFI representative, and relates to the following four statements:

> **Statement One**: Unfortunately, [GDI] completely failed to live up to our agreement, which includes their obligations within the Kickstarter campaign, failing to manufacture and deliver the products that our fans rightfully deserved.

> **Statement Two**: The Lisa Frank Company knows how you feel, as we did not receive what [GDI] promised us either.

> **Statement Three**: After many months of pushing [GDI] to live up to its contractual obligations and deliver products — to our fans and retailers that ordered products — [LFI] reached the point of exasperation, terminated the agreement with [GDI], and contacted the Federal Government.

> **Statement Four**: To say we are disappointed by the

---

[13]This amount appears to be a typo.  Based on the evidence, the amount of royalties paid seems to be $703,850.73.  (*See* Doc. 90-5 at 20.)

events that transpired as a result of this license is an
understatement.

(Doc. 93 at 10, DSOF ¶ 65; Doc. 90, Ex. 21 at 14.)

### 1. Parties' Arguments

Defendants argue the evidence does not support GDI's defamation claim because GDI cannot prove there are actionable defamatory statements and that Defendants acted with the requisite fault.  (Doc. 89 at 11.)  Specifically, Defendants argue there is no actionable defamatory statement in the Article and, even if there were, GDI has not shown Defendants acted negligently.  (*Id.* at 11–13.)

GDI asserts, when the statements are read as a whole, this paragraph in the Article contains factual assertions and false statements capable of a defamatory meaning.  (Doc. 93 at 9–14.)  GDI also asserts Defendants acted with the requisite fault because they made the Statement negligently.  (*Id.*)

### 2. Analysis

Under Arizona law, a plaintiff must establish, among other things, an actionable defamatory statement and the requisite level of fault.

#### a. Actionable Defamatory Statements

"To defeat a defendant's motion for summary judgment in a defamation case, the plaintiff must present evidence 'sufficient to establish a prima facie case with convincing clarity.'"  *Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 462 (Ariz. Ct. App. 2017) (quoting *Read v. Phx. Newspapers, Inc.*, 819 P.2d 939, 942–43 (Ariz. 1991)).  The plaintiff must establish there is a false publication that brings the defamed "into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation."  *Rogers v. Mroz*, 502 P.3d 986, 988 (Ariz. 2022) (quoting *Godbehere v. Phx. Newspapers, Inc.*, 783 P.2d 781, 787 (1989)).

True and substantially true statements cannot support a claim for defamation.  *Read*, 819 P.2d at 941; *see also Takieh v. O'Meara*, 497 P.3d 1000, 1006 (Ariz. Ct. App. 2021) (noting a disparaging statement causing reputational harm, without more, is insufficient to

establish defamation).  A statement is substantially true "as long as the gist or sting of the publication is justified." *Read*, 819 P.2d at 941 (internal quotation marks and citations omitted).  "A technically false statement may nonetheless be considered substantially true if, viewed through the eyes of the average reader, it differs from the truth only in insignificant details." *Currier v. W. Newspapers, Inc.*, 855 P.2d 1351, 1354 (Ariz. 1993) (internal quotation marks and citation omitted).

Moreover, "[w]hile statements cast as subjective beliefs are generally insulated from defamation liability, 'statements of opinion *are* actionable when they imply a false assertion of fact.'" *Takieh*, 497 P.3d at 1006 (quoting *Turner v. Devlin*, 848 P.2d 286, 293 (1993)).  "In other words, if a statement of opinion may be proven false, it is actionable as defamatory, but a statement is not actionable if it does not present the kind of empirical question a fact-finder can resolve." *Id.* (internal citations and quotation marks omitted).

Defendants challenge each of these statements in the Article individually (Doc. 89 at 11–12) and GDI argues this is improper because this amounts to "snippets taken out of context."  (Doc. 93 at 10 (citation omitted).)  For this analysis, the Court will evaluate the four statements individually and then consider the statements as a whole.  *See Reynolds v. Reynolds*, 294 P.3d 151, 155 (Ariz. Ct. App. 2013) ("[T]he 'meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor.'" (quoting *Burns v. Davis*, 993 P.2d 1119, 1129 (Ariz. Ct. App. 1999))).

### i. Statement One

The first statement is: "Unfortunately, [GDI] completely failed to live up to our agreement, which includes their obligations within the Kickstarter campaign, failing to manufacture and deliver the products that our fans rightfully deserved."  (Doc. 93 at 10, DSOF ¶ 65; Doc. 90, Ex. 21 at 14.)  Defendants argue this statement is substantially true because GDI failed "to manufacture and deliver certain Kickstarter Campaign products, for which fans had paid" and GDI admits it "fail[ed] to pay the minimum royalty due" and

"manufactur[ed] and deliver[ed] unapproved products." (Doc. 89 at 11.) GDI refutes this and asserts Statement One contains actionable defamatory material. (*See* Doc. 93 at 11–13.) To support this assertion, GDI cites the declaration of Frank, portions of the deposition of Frank, Defendants' termination letter, and a January 2018 email chain between Georgotas and McPhillips—an LFI employee. (*See* Doc. 93 at 13–14 (citing PASOF ¶¶ 58–61); *see also* Doc. 94 Ex. 2 at 232:11-236:3 (Frank Deposition),[14] Ex. 27 (LFI Payment Chart), Ex. 11 (email chain); Doc. 36-3 (Termination Letter).)

Frank's Declaration, LFI's payment chart, and the email from Ms. McPhillips confirm GDI made several royalty payments as required by the Agreements and the January 2018 emails confirm GDI provided samples while trying to collaborate with LFI. Defendants ignore the use of the word "completely" in Statement One and the Court finds, based on the evidence presented, a jury could find GDI "lived up" to some parts of the Agreements, thereby making Statement One false. There are genuine issues of material fact for the jury to resolve regarding whether the statement differs from the truth only in insignificant details. Moreover, Defendants do not argue this language is hyperbolic[15] (*see* Doc. 89 at 11 and Doc. 95 at 10) and the average reader could interpret the statement to mean GDI is solely to blame for the inability to get products to consumers.

### ii. Statement Two

The second statement is: "The Lisa Frank Company knows how you feel, as we did not receive what [GDI] promised us either." (Doc. 93 at 10, DSOF ¶ 65; Doc. 90, Ex. 21 at 14.) Defendants argue the first part of Statement Two is not capable of a defamatory meaning because it is a subjective feeling and the second part of Statement Two is substantially true because GDI "never paid the minimum royalty owed, nor completed the term of the Second Agreement." (Doc. 89 at 11.)

It is undisputed GDI did not manufacture and deliver every order paid for by fans

---

[14]Plaintiff cites pages 223 through 236 of Frank's deposition but pages 223 through 231 are not included in the record. (*See* Doc. 94, Ex. 2.)

[15]As a matter of law a statement is not actionable if it contains "'hyperbolic language' that cannot reasonably be interpreted as stating or implying facts 'susceptible of being proved true or false.'" *Takieh*, 497 P.3d at 1006 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)).

through the Kickstarter Campaign and failed to deliver some products to Hot Topic. (DSOF ¶¶ 67–68; PCSOF ¶¶ 67–68; Doc. 90 Exs. 28–29.)  The Court finds Statement Two, on its own, is not actionable because the first part of the statement is a subjective opinion about LFI's belief about the Agreements and it does not present the kind of empirical question a factfinder can resolve.  The Court also finds the second part of the statement is, at least, substantially true because GDI did not meet some of its promises by failing to deliver orders and products.

### iii. Statement Three

The third statement is: "After many months of pushing [GDI] to live up to its contractual obligations and deliver products – to our fans and retailers that ordered products – [LFI] reached the point of exasperation, terminated the agreement with [GDI], and contacted the Federal Government."  (Doc. 93 at 10, DSOF ¶ 65; Doc. 90, Ex. 21 at 14.)  Defendants argue "[GDI] did not live up to its contractual obligations and failed to deliver products to fans and retailers" and LFI pushed GDI to comply by reminding it "to pay its royalty payments and working with [GDI] to secure complete approval of all Licensed Products."  (Doc. 89 at 12 (citing DSOF ¶ 71).)  Defendants also argue it is true LFI "terminated the Second Agreement and contacted the federal government to report [GDI]'s non-performance and misuse of Kickstarter funding."  (Doc. 89 at 12.)  GDI asserts it "endeavored to perform its contractual obligations without needing to be 'pushed' by LFI" and it did not fail to live up to the Agreements.  (Doc. 93 at 11–12.)  GDI also asserts it is disputed whether Frank contacted the federal government because she only "casually mention[ed]" GDI in passing "to an FBI agent who was in her office on an unrelated matter and she admitted "nothing came from the conversation."  (*Id.* at 12; DSOF ¶ 72; PCSOF ¶ 72 (citing Doc. 94, Ex. 2 at 233:16–236:3).)

The Court finds it at least substantially true LFI "pushed GDI to live up to its contractual obligations and deliver products" for many months.  GDI disputes it failed to make a timely royalty payment (PCSOF ¶ 50), but the evidence it cites as support establishes Georgotas acknowledged the payment should have been made by GDI in March

2018 and it was not made until May 2018.  (Doc. 94, Ex. 5 at 468:3–25; *see also* Doc. 36, Ex. B § 6(b).)  Similarly, it appears GDI also struggled to make a timely payment in June 2018 because the evidence shows the last payment was received by LFI on June 28, 2018 (Doc. 90, Ex. 27) and it was due on or before June 24, 2018.  (DSOF ¶ 52; PCSOF ¶ 52.)  Although GDI eventually made those payments, the evidence shows LFI had to remind GDI to make the payments and there were at least two instances where payments were untimely made over the course of a few months.  The Products Approval Charts in the June 2018 email chain also suggest several months of LFI working with GDI to try to create and deliver products before the Second Agreement was terminated.   (Doc. 90 Ex. 33.)  Therefore, the Court fails to see a *genuine* dispute of material fact on this matter.

The Court also finds it substantially true LFI contacted the federal government about this matter.  It is undisputed Defendant Frank mentioned LFI's dispute with GDI to an FBI agent.  (*See* Doc. 93 at 12.)  GDI argues this interaction is insufficient to support the statement because the FBI agent was in LFI's office on an unrelated matter and nothing came of it.  This argument is unavailing and does not present a genuine dispute of material fact.   The Court finds Defendant Frank's discussion with an FBI agent sufficient to establish it is substantially true LFI contacted the federal government about its business dispute with GDI.  Therefore, the Court finds nothing in Statement Three is actionable.

### iv. Statement Four

The fourth statement is: "To say we are disappointed by the events that transpired as a result of this license is an understatement."  (Doc. 93 at 10, DSOF ¶ 65; Doc. 90, Ex. 21 at 14.)  Defendants argue Statement Four is not defamatory because it merely "addresses LFI's subjective feelings" and "fails to impeach [GDI]'s honesty, integrity, virtue, or reputation."  (Doc. 89 at 12.)  The Court finds Statement Four is a non-actionable subjective opinion.  *See Turner*, 848 P.2d at 291.

### v. Conclusion

Upon considering the statements individually and as a whole, the Court finds most of the portions identified by GDI were completely accurate or substantially true.  However,

1   the portion of Statement One stating GDI completely failed to live up to its contractual

2   obligations is actionable because GDI has presented evidence of ways it complied with the

3   Agreements.

4                          *b.  Fault: Negligence*

5       In terms of fault, a plaintiff must prove a heightened standard—actual malice—if

6   the matter involves a public figure.  *Rogers v. Mroz*, 502 P.3d 986, 991 (Ariz. 2022).

7   Otherwise, the plaintiff need only establish negligence.  *See Greschner v. Becker*, No. CV-

8   14-02352-PHX-GMS, 2015 WL 685156, at *2 (D. Ariz. Feb. 18, 2015); *see also Peagler*

9   *v. Phx. Newspaper, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (en banc).  Because Defendants

10  do not argue GDI needs to prove actual malice in this case (*see* Doc. 89 at 12–13; Doc. 95

11  at 10–11), the Court will only address whether GDI has shown enough evidence to meet

12  the negligence standard.   In the defamation context, negligence is the failure to act

13  "reasonably in attempting to discover the truth or falsity or the defamatory character of the

14  publication."  *Peagler*, 560 P.2d at 1222 (citing Restatement (Second) of Torts § 580B cmt.

15  F (Am. L. Inst. 1977)).

16      GDI asserts Defendants were negligent because they "made the [statements in

17  question] even though they were fully aware" of the following: "(i) [GDI] paid [them]

18  $701,308.73, (ii) Defendants terminated the [Second] Agreement, (iii) up until Defendants'

19  termination of the Agreements, [GDI] diligently worked to design and manufacture

20  collaboration products, and (iv) Defendants did not 'contact the Federal Government'

21  about [GDI]."   (Doc. 93 at 13.)   According to GDI, the documentary evidence and

22  admissions by LFI "establish that LFI acted negligently in making the Statement."  (*Id.* at

23  13–14.)  For the reasons mentioned above, *see infra* Section (E)(2)(a), GDI has provided

24  evidence LFI's representative made Statement One negligently by failing to confirm

25  whether GDI "*completely* failed to live up to [the] agreement."  (Doc. 93 at 10 (emphasis

26  added).)   Therefore, the Court finds there is a genuine dispute of material fact about

27  whether Defendant LFI is liable for defamation.  The Court will dismiss the defamation

28  claim against Defendant Frank because there is no evidence she made or restated the

1    defamatory statements at issue, and GDI does not make any such allegations.

2    **F.  Counts Six-Eight**

3    Defendants argue in their Reply GDI "abandoned [Counts Six–Eight] by failing to

4    present any argument or defense of these claims" and failing to "dispute a single fact

5    asserted by Defendants as to those claims."  (Doc. 95 at 3) (emphasis omitted).  To the

6    extent Defendants argue the Court should summarily grant the Motion for Summary

7    Judgment on these claims, it cannot do so.  *See* Fed. R. Civ. P. 56, advisory committee note

8    to 2010 amendments ("[S]ummary judgment cannot be granted by default even if there is

9    a complete failure to respond to the motion."); *see also Finkle v. Ryan*, 174 F. Supp. 3d

10   1174, 1180–81 (D. Ariz. 2016) (if a summary judgment motion is unopposed, Rule 56 only

11   authorizes the court to consider the unopposed facts as undisputed).  Therefore, the Court

12   must address Defendants' Motion for Summary Judgment on the merits but it will treat

13   Defendants' facts for these three counts as undisputed.

14   . . . .

15   **1. Lanham Act (Count Six) and Trade Libel (Count) Seven**

16   GDI alleges Defendants violated the Lanham Act, 15 U.S.C. § 1125, *et seq.* and

17   committed trade libel based on statements LFI made in the Article.  (Doc. 28 ¶¶ 107, 115.)

18   Defendants argue GDI "cannot establish the requisite damages" for either claim because it

19   "cannot prove that the Article caused any injury."  (Doc. 89 at 13.)

20   "As a general rule, damages which result from a tort must be established with

21   reasonable certainty."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir.

22   1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839

23   F.3d 1179 (9th Cir. 2016).  Furthermore, under Arizona law, a plaintiff must prove special

24   damages to prevail on a trade libel claim.  *See Gee v. Pima Cnty.*, 612 P.2d 1079, 1080

25   (Ariz. Ct. App. 1980) (granting summary judgment because plaintiffs "failed to allege

26   special damages").

27   GDI fails to offer any evidence to show there are damages to sustain its Lanham Act

28   claim nor did it offer evidence to show the special damages necessary to sustain its trade

- 24 -

libel claims.[16]   Therefore, the Court finds Defendants have shown the evidence is insufficient to establish an essential element of the claims and Defendants are entitled to judgment as a matter of law on Counts Six and Seven.

### 2. Tortious Interference with Business Expectancies (Count Eight)

GDI alleges "[a]fter the Insider Article circulated . . . third parties with which [it] had previously dealt and/or which had expressed interest in collaborating with [it] prior to the [A]rticle's publication, including, but not limited to, MGD Solutions, Inc., Kickfurther, and H-E-B Grocery Company, LP, abruptly backed out and refused to speak or even communicate with [it]."  (Doc. 28. ¶ 125.)

Defendants argue this claim fails because, among other things, "there is no evidence that Defendants intentionally interfered with" a business expectancy nor that they acted improperly.  (Doc. 89 at 15–16.)

To recover for tortious interference with a business expectancy under Arizona law, a plaintiff must prove: "(1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy . . . (4) damage suffered as a result of termination of the business expectancy" and (5) the interferer acted improperly.  *Two Bros. Distrib. Inc. v. Valero Mktg. & Supply Co.*, 270 F. Supp. 3d 1112, 1129–30 (D. Ariz. 2017), *aff'd*, 769 F. App'x 408 (9th Cir. 2019) (citing *Dube v. Likins*, 167 P.3d 93, 99 (2007)).

Here, the following facts are undisputed.  GDI listed no potential witnesses from any of the three companies in its Rule 26(a)(1) disclosures.  (DSOF ¶ 78; PCSOF ¶ 78; Doc. 90 Ex. 36 at 3–6.)  GDI testified the relationship with MGD solutions, Inc. "naturally ended" and things were "left . . . on a positive note."  (DSOF ¶ 79; PCSOF ¶ 79; Doc. 90 Ex. 7 at 355:19–356:4, 356:17–21.)  GDI admitted the relationship with Kickfurther ended in late 2018 because it owed Kickfurther money, not because of the Article which was published in 2020.  (DSOF ¶ 80; PCSOF ¶ 80; Doc. 90 Ex. 7 at 357:19–25.)  GDI admitted it only had "just a couple" interactions with H-E-B Grocery Company, LP ("HEB") and

---

[16]Although the Court "may consider other materials in the record," it is only required to consider "the cited materials."  Fed. R. Civ. P. 56(c)(3).

this company never issued a purchase order.  (DSOF ¶ 80; PCSOF ¶ 80; Doc. 90 Ex. 7 at 368:8–11, 369:1–12.)  GDI also confirmed it no longer had the capacity to manufacture any goods for HEB by the time the Article was posted.  (DSOF ¶ 80; PCSOF ¶ 80; Doc. 90 Ex. 7 at 360:1–18.)  GDI fails to offer any evidence to establish Defendants intentionally induced or caused termination of the business expectancy or acted improperly in a manner that damaged them.  Accordingly, Defendants have shown the evidence is insufficient to establish essential elements of the claim and Defendants are entitled to judgment as a matter of law on Count Eight.

### G. Alter Ego

#### 1. Parties' Arguments

Defendant Frank argues she is entitled to summary judgment because GDI's evidence cannot establish either part of the two-prong test required for alter-ego liability.  First, Defendant Frank argues GDI cannot meet the first prong because there is insufficient evidence to establish unity of control.  (Doc. 89 at 17.)  Specifically, she argues GDI has not shown the individuality or separateness of the individual and the corporation ceased to exist because all royalty payments were paid to LFI, not Defendant Frank, and GDI incorrectly states "Frank is the sole owner, founder, president, and CEO of LFI."  (*Id.*)  Second, Defendant Frank argues GDI cannot meet the second fraud/injustice prong because there is no evidence showing "[GDI] was (or is) confused *at all* about the entity with which it chose to contract" and "[g]iven that [GDI] pursued eight claims against LFI, it would not promote any injustice to require [GDI] to seek recourse only from LFI, not Ms. Frank."  (*Id.* at 17–18.)

For the first prong, GDI argues Frank's deposition testimony establishes there is unity of control because she "'exercise[s] substantially total control over the management and activities' of LFI."  (Doc. 93 at 14–15 (alteration in original) (citing *Taeger v. Catholic Fam. & Cmty. Servs.*, 995 P.2d 721, 733 (Ariz. Ct. App. 1999).))  As evidence, GDI cites Defendant Frank's ownership of all LFI shares (prior to 2023), her role as president of LFI, her role as one of two officers, her intermingling of work and personal trips, her role in

making substantial company decisions, running LFI out of her residence, and letting LFI employees perform personal tasks for her.  (*Id.* at 14–15.)  For the second prong, GDI argues observing the corporate form would promote a "fraud of injustice" because Frank is "involved in all of LFI's day-to-day activities," is "the ultimate decision maker," "makes decisions based on her personal feelings, even if they are not necessarily best for the business," and knows of "[e]very action taken by LFI against [GDI]."  (*Id.* at 15.)

## 2.  Analysis

Generally, the owner of a corporation is not liable for the obligations of that entity. *See U.S. Bank Nat'l Assoc. v. Starr Pass Resort Devs. LLC*, No. 2 CA-CV 2018-0030, 2019 WL 2237471, at *15 (Ariz. Ct. App. May 22, 2019) (citing *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972)).  However, an owner is liable for corporate debts if alter-ego liability applies (i.e. if the corporate veil is pierced).  *Id.*  In Arizona, the corporate status is not "lightly disregarded."  *JTF Aviation Holdings Inc v. CliftonLarsonAllen LLP*, 472 P.3d 526, 530 (Ariz. 2020) (quoting *Chapman v. Field*, 602 P.2d 481, 483 (Ariz. 1979)). "The alter-ego status is said to exist when there is such unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel*, 492 P.2d at 457.  To establish alter ego liability, a plaintiff "must prove both (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991).

### a.  Unity of Control

In assessing unity of control between a corporation and its shareholders, the Court considers the following factors: "payment of salaries and expenses of the corporation by shareholders; failure to maintain corporate formalities; undercapitalization; commingling of corporate and personal finances; plaintiff's lack of knowledge about a separate corporate existence; owners' making of interest-free loans to the corporation; and diversion of corporate property for personal use."  *Great Am. Duck Races, Inc. v. Intell. Sols., Inc.*, No. 2:12-CV-00436, 2013 WL 1092990, at *2 (D. Ariz. Mar. 15, 2013) (citing *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195 (Ariz. Ct. App. 1994)).

Here, GDI alleges Defendant Frank was the president, an officer, and sole shareholder of LFI prior to 2023. All of this is insufficient, on its own, to establish unity of control. *See Honeywell, Inc. v. Arnold Const. Co.*, 654 P.2d 301, 307 (Ariz. Ct. App. 1982) (finding individuals "did not so closely intermix their actions with those of the corporation such as to justify finding a merger of identities."); *see also Ferrarell v. Robinson*, 465 P.2d 610, 613 (Ariz. Ct. App. 1970) (noting mere fact individual was officer and sole shareholder insufficient to disregard corporate form without substantial evidence showing separateness ceased to exist).

However, GDI does offer some evidence supporting unity of control. For example, GDI asserts Frank ran LFI out of her residence and let employees perform personal tasks for her (Doc. 93 at 15 (citing PASOF ¶¶ 75–76)). Frank's deposition establishes LFI had offices at one of her previous residences and at some point she "paid all the expenses" while "[LFI] worked out of it." (Doc. 94, Ex. 2 at 177:1–19.) An email suggests LFI employee used her corporate email, on at least one occasion, to inquire about personal matters for Frank. (Doc. 94, Ex. 15.) Text messages between an LFI employee and Georgotas also show she performed personal tasks while discussing business matters.[17] (Doc. 94, Ex. 37.) While this evidence is favorable to GDI's argument, the Court does not find it to be *substantial* evidence supporting separateness ceased to exist.

GDI offers no evidence LFI was not adequately capitalized upon formation, GDI lacked knowledge about LFI, Frank made interest-free loans to the corporation, and commingling of corporate and personal finances. GDI also does not adequately demonstrate LFI failed to maintain corporate formalities to the point "separateness ceased to exist" because there is no clear evidence such as LFI failing to hold corporate meetings or failing to file corporate income taxes. Therefore, GDI has failed to create an issue of

---

[17]GDI also asserts Frank intermingled work and personal trips because she took a trip to Greece with Georgotas and admitted going for personal reasons and to do work. (Doc. 94, Ex. 2 at 196:11-197:3; 197:7-198:14, 198:15-200:3.) However, GDI does not cite to evidence showing who paid for the trip and expenses so the Court cannot infer this shows Frank paid for corporate expenses.

1    fact sufficient for a jury to conclude Frank is an alter ego of LFI.  Nonetheless, even if GDI

2    could establish unity of control, the Court will address why the second prong is not met.

3                                    *b.   Fraud or Injustice*

4            A fraud or injustice arises if observance of the corporate form would confuse the

5    opposing parties and frustrate their efforts to protect their rights, while allowing the party

6    responsible to evade liability.  *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1184 (Ariz.

7    Ct. App. 2016)).  The fact "that plaintiffs did not receive the benefit of their bargain . . .

8    alone does not constitute any evidence of fraudulent conduct and . . . is not sufficient to

9    justify the disregarding of the corporate entity." *Ferrarell v. Robinson*, 465 P.2d 610, 613

10   (Ariz. Ct. App. 1970).  Arizona courts consider "injustice" as an alternative to "fraud" for

11   the purposes of establishing the second element of alter ego liability.  *See Loiselle v. Cosas*

12   *Mgmt. Grp., LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010).

13           Here, there is no evidence presented GDI was confused it was dealing with LFI

14   rather than Frank.  (*See* Doc. 93 at 15.)  It is undisputed the contract was entered into

15   between GDI and LFI only (DSOF ¶¶ 5, 20; PCSOF ¶¶ 5, 20; Doc. 36-1; Doc. 36-2) and

16   GDI only made payments to LFI's bank account (DSOF ¶ 89; PCSOF ¶ 89; Doc. 90 Ex. 1

17   ¶ 3; Ex. 9 at 30:13–19, 31:7–32:2; Ex. 27; Ex. 37.)  Furthermore, the Court fails to see how

18   GDI is unable to protect its rights in this situation.  GDI can and has sued LFI for all the

19   claims alleged against Defendant Frank.  (*See* Doc 28 at 17, 19, 21, 23–24, 26, 28–29.)

20   The record is devoid of any evidence suggesting LFI is on the verge of bankruptcy or

21   Defendant Frank entered into these Agreements, on behalf of LFI, without an intention to

22   fulfill monetary obligations.  GDI also does not argue nor is there any evidence to suggest

23   Defendant Frank created LFI as a sham.  Thus, this case is distinguishable from the cases

24   cited by GDI.  *See Youngren v. Rezzonico,* 543 P.2d 142, 144–46 (Ariz. Ct. App. 1975)

25   (finding an injustice and piercing corporate veil where there was evidence supporting the

26   president of a corporation "purchased [a] horse, knowing the corporation was on the verge

27   of bankruptcy, with no intention of paying the note"); *Schirmer v. Avalon Health Care Inc.*,

28   No. CV-15-01550-PHX, 2017 WL 1927914, at *4 (D. Ariz. May 10, 2017), *aff'd*, 772 F.

App'x 546 (9th Cir. 2019) (finding no evidence of fraud or injustice because no indication the "financial setup of the corporation is only a sham" (quoting *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 729 (Ariz. Ct. App. 1978))).  Even if GDI did not receive the benefit of their bargain, this alone "is not sufficient to justify the disregarding of the corporate entity." *Ferrarell*, 465 P.2d at 613.  Because GDI offers insufficient evidence to demonstrate a genuine dispute of material fact that could lead a jury to conclude LFI was an alter ego for Defendant Frank, summary judgment in Defendant Frank's favor is appropriate.

## H. **Defendants' Breach of Contract Counterclaim**

### 1. **Parties' Arguments**

LFI argues it is entitled to summary judgment for its breach-of-contract counterclaim because it is undisputed there is a contract, breach, and resulting damages. (Doc. 89 at 18.)  Specifically, LFI argues there is no genuine dispute the Second Agreement required GDI to pay a Quarter 3 GMR payment, Plaintiff failed to make this payment, the obligation to pay survived termination of the Second Agreement per § 5.2(i) and "LFI's damages are . . . unrefuted ($125,000 plus 18% interest)."  (Doc. 89 at 18 (citing DSOF ¶¶ 22, 52, 70).)

In response, GDI asserts summary judgment must be denied because the Second Agreement provides in relevant part that a party seeking to terminate for breach must first provide written notice of the alleged breach and give the other party 20 days to cure.  (Doc. 93 at 17.)  GDI also asserts it should be excused from having to perform the Second Agreement because "LFI's termination of the Agreement [on July 3, 2018] constituted a material breach, and LFI cannot succeed on a breach of contract claim based on any alleged subsequent breach."  (*Id.* at 16–17.)  According to GDI, "[s]ummary judgment cannot be granted here because the parties hotly dispute who first breached the Agreements, and LFI has failed to establish through undisputed evidence it fully performed under the [Second] Agreement."  (Doc. 93 at 16–17.)  GDI asserts "the alleged breaches identified in LFI's termination letter are a sham," LFI's claim GDI breached § 8.4 is not "within the

1   Agreement's definition of a material breach," and failure to seek pre-production approval

2   occurred prior to the execution of the [Second] Agreement." (*Id.*)

3   In reply, LFI argues "[GDI]'s argument ignores its . . . undisputed breaches." (Doc.

4   95 at 12.) Specifically, LFI argues it is undisputed GDI committed breaches by paying the

5   Quarter 1 GMR late, failing to deliver some Kickstarter products, failing to deliver some

6   Hot Topic Products, and "shipp[ing] an eyeshadow without sending the required

7   samples."[18] (Doc. 95 at 12 (citing DSOF ¶¶ 49–50, 67–69).)

## 2. Analysis

9   The elements of breach of contract are articulated above. *See supra* Section III(A).

10  Under Arizona law, uncured, material breach of contract relieves the non-breaching party

11  from its duty to perform and can discharge that party from the contract. *See Murphy Farrell*

12  *Dev., LLLP v. Sourant*, 272 P.3d 355, 364 (Ariz. Ct. App. 2012). To determine whether a

13  breach was material, the following five factors must be considered:

> (a) the extent to which the injured party will be deprived of the
> benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately
> compensated [by damages] for the part of that benefit of which
> he will be deprived;
> (c) the extent to which the party failing to perform or to offer
> to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to
> perform will cure his failure, taking account of all the
> circumstances including any reasonable assurances;
>  (e) the extent to which the behavior of the party failing to
> perform or to offer to perform comports with standards of good
> faith and fair dealing.

*Found. Dev. Corp. v. Loehmann's, Inc.*, 788 P.2d 1189, 1197–98 (1990) (alteration in

original) (quoting Restatement (Second) of Contracts § 241). A claim of material breach

excusing further performance is an affirmative defense, *see Frank Lloyd Wright Found. v.*

---

[18]LFI briefly states "[GDI] tries to excuse its nonpayment by arguing LFI first breached by not providing written notice (an affirmative defense *not* pleaded *see* Plf.'s Answer (Doc. 42.)." Even if this could be interpreted as arguing GDI shall not be allowed to claim excuse at this point in the case, LFI does not meet its burden of showing the defense should be waived because it does not argue it was prejudiced. *See Garcia v. Salvation Army*, 918 F.3d 997, 1008 (9th Cir. 2019) (noting a defendant may raise an affirmative defense for the first time at summary judgment in the absence of prejudice).

1    *Kroeter*, 697 F. Supp. 2d 1118, 1133 (D. Ariz. 2010), and the proponent of this defense has

2    the burden of proof at trial, *see Nat'l Bank of Ariz. v. Thruston*, 180 P.3d 977, 984 (Ariz.

3    Ct. App. 2008).

4           The following provisions from the Second Agreement are relevant to this analysis.

5    Section 5.2 (i) states:

6                  If this Agreement ends or is terminated for any reason before
                   the Term expires, all monies owed by Licensee to LFI,
7                  including any unpaid Royalty under Section 6, shall become
                   immediately due and payable. If the sum due is not paid within
8                  four (4) business days of the due date, Licensee shall pay
                   interest thereon at a rate of 18% per annum (or, if less than
9                  18%, the maximum rate permissible under law).

10   (Doc. 36-2.)

11
     Section 9 states:
12
                   If a party breaches this Agreement, the other party, in addition
13                 to its other legal or equitable rights or remedies, may serve the
                   breaching party with written notice of such breach.  Subject to
14                 Section 10, the breaching party shall then have twenty (20
                   days) from the date of such notice to cure such breach, except
15                 that with respect to breaches involving the nonpayment of
                   money the cure period shall be ten (10) days.  Should the
16                 breaching party fail to remedy a material breach within the cure
                   period, then the non-breaching party may terminate this
17                 Agreement and the License on the expiration of such cure
                   period.
18
     (Doc. 36-2.)
19

20   Section 10 states:

21                 Notwithstanding Section 9, LFI, in addition to any other rights,
                   may terminate this Agreement immediately for material breach
22                 upon any one of the following [10] occurrences[.]

23   (Doc. 36-2.)

24          Here, Defendants have established there is sufficient evidence of a contract, a

25   breach, and damages based on the undisputed facts.  First, it is undisputed LFI and GDI

26   entered into a contract—the Second Agreement.  (DSOF ¶ 19; PCSOF ¶ 19).  Second, it is

27   undisputed LFI terminated the Second Agreement in July 2023 (DSOF ¶ 27; PCSOF ¶

28

27),[19] and GDI did not make a final GMR payment (DSOF ¶ 70; PCSOF ¶ 70).  Under the Second Agreement's express terms (*see* Doc. 36-2 § 5.2(i)), GDI was required to pay any unpaid GMR payments after the contract terminated.  Whether LFI properly terminated the Second Agreement is irrelevant under the express contract terms.  Because it is undisputed the Second Agreement was terminated in July 2018 before the GMR payment became due in September 2018, GDI breached § 5.2(i) of the Second Agreement.  Third, GDI does not contest the interest rate shall be 18% per annum as expressly stated in the contract and the Court does not see a reason to deviate from that percentage.  *See* A.R.S. § 44-1201(A)(2) ("For any loan, indebtedness or obligation other than medical debt, interest shall be at the rate of ten per cent per annum percent a year, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.").

However, Defendants have failed to properly address GDI's affirmative defense. (*See* Doc. 95 at 12.)  Because GDI must prove material breach at trial, LFI can only prevail on summary judgment by citing evidence "negating an essential element of [GDI]'s claim or by showing [GDI]'s proffered evidence is insufficient to establish an essential element." *See Celotex*, 477 U.S. at 322–23.  LFI has done neither.  Instead, LFI improperly focuses on GDI's "undisputed breaches" in the record rather than contesting GDI's claim LFI committed a *material* breach before any GDI breach.  (*Id.* at 12.)  Therefore, LFI has not shown it is entitled to summary judgment on this claim.

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED**

1. Defendants' Motion for Summary Judgment (Doc. 89) is **DENIED** as to the portion of Count One against Defendant LFI regarding failure to provide artwork for the Wengie Palette.

---

[19]Although GDI argues "LFI terminated the [Second] Agreement via phone call on July 3, 2023" in its Controverting Statement of Facts (PCSOF ¶ 27) the year appears to be a typo because the next statement indicates "LFI then followed up with a termination letter on July 25, 2018" and the pages cited from the Ross deposition do not exist in the record. (*See* PCSOF ¶ 27 (citing Doc. 94, Ex. 1 at 189:1–190:6, 197: 7–22).)

2.  Defendants' Motion for Summary Judgment (Doc. 89) is **DENIED** as to the Breach of Contract Counterclaim.

3.  Defendants' Motion for Summary Judgment (Doc. 89) is **DENIED IN PART** as to the portion of Count Five related to completely failing to live up to the Agreement.

4.  Defendants' Motion for Summary Judgment (Doc. 89) is **GRANTED IN PART** as to Counts One (not otherwise mentioned above), Two, Three, Four, Six, Seven, Eight, and Nine.  These claims are dismissed.

5.  **IT IS FURTHER ORDERED** Counsel shall file a Joint Proposed Pretrial Order on or before **Monday, October 21, 2024**. The contents of the Joint Proposed Pretrial order shall include, but are not limited to, the information in the attached template.  The Court *typically* uses the deadlines in the template, but these deadlines may change depending on the nature of the case.[20]

Dated this 23rd day of September, 2024.

Honorable Scott H. Rash
United States District Judge

---

[20]The parties may disregard the Motion in Limine deadlines and template attached to the Scheduling Order.  (*See* Doc. 46.)  Instead, the parties shall follow the recommended deadlines in the new template attached to this Order.

1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**
7                      **FOR THE DISTRICT OF ARIZONA**
8
9    ,                                    No. CV-XXX-XXXXX-TUC-SHR
10                   Plaintiff,            **[Joint Proposed Pretrial Order]**
11   v.
12   ,
13                   Defendant.

14          Pursuant to the Scheduling Order previously entered, the following Joint Proposed
15   Pretrial Order reflects the agreement of the parties regarding pretrial proceedings:
16   **I.      IDENTIFICATION OF PARTIES AND COUNSEL**
17   **II.     NATURE OF ACTION**
18          Provide a concise statement of the type of the case, including the cause of action
19   and the relief sought.  This will be used in the juror questionnaire (if one is used)
20   and/or read to the jury at the beginning of voir dire.
21   **III.    STATEMENT OF JURISDICTION**
22          State the claims and cite the statutes which give this Court jurisdiction over each
23   claim.
24   **IV.     CONTENTIONS OF THE PARTIES**
25          With respect to each count of the complaint, counterclaim, or cross-claim, and to
26   any defense, affirmative defense, or the rebuttal or a presumption where the
27   burden of proof has shifted, the party having the burden of proof shall list the
28   elements or standards that must be proven in order for the party to prevail on that

claim or defense.

(E.g.: In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .)

 (E.g.: In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

**V.    STIPULATIONS AND UNCONTESTED FACTS**

Identify any stipulations reached between the parties and any facts that are uncontested.

**VI.   CONTESTED ISSUES OF FACT**

List issues of fact to be tried and determined upon trial.  Each issue of fact must be stated separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

**VII.  CONTESTED ISSUES OF LAW**

The following are issues of law to be tried and determined upon trial. Each issue of law must be stated concisely, separately and in specific terms, followed by the parties' contentions as to each issue. E.g.:

Issue:

Plaintiff(s) contends:

Defendant(s) contends:

**VIII. PENDING MOTIONS**

State all motions that remain pending on the docket as of the date of the proposed order.

**IX.    UPCOMING MOTIONS**

State all motions that the parties anticipate filing before trial.

**X.      LIST OF WITNESSES**

Each party shall provide a list of witnesses intended to be called at trial. As to each witness, identify whether he or she is a fact or expert witness and include a brief statement of the expected testimony of any expert witness.

**XI.      LIST OF EXHIBITS**

Each party shall provide a list of numbered exhibits intended to be used at trial.  As to each exhibit, the party shall include a description containing sufficient information to identify and distinguish the exhibit.  Further, a statement of either UNCONTESTED or CONTESTED shall follow each listed exhibit.  If contested, a brief statement of the objection by the opposing party shall also follow the listed exhibit.

(e.g. - 1. Laboratory Report from the Clinical Immunology Diagnostic Laboratory dated 6/15/14. CONTESTED by ***- Relevance, foundation and hearsay.)

**XII.      LIST OF DEPOSITIONS**

Each party must list portions of depositions it intends to read at trial and must include the page and line number(s). A statement of either UNCONTESTED or CONTESTED shall follow every  identified portion of each listed deposition.  If contested, a brief statement of the objection by the opposing party shall follow the listed portion of the deposition to be offered.

**XIII.   JURY TRIAL DEADLINES**

Unless otherwise ordered by the Court,[1]

1. Motions in limine shall be filed no later than 45 days before trial.  Responses to motions in limine shall be filed with the Court and served upon each party no later than fourteen (14) days thereafter.  Under LRCiv 7.2(l), no replies shall be permitted unless the Court states otherwise.  Each party may file no

---

[1]If the parties wish to request different deadlines from the Court's typical deadlines, the parties may propose other deadlines and explain the basis for the deviation in this section of the Joint Proposed Pretrial Order.  The Court will address these concerns and issue deadlines at a pretrial conference.

more than five motions in limine. Each motion in limine must include proposed language for the order being sought from the Court, and the proposed language must state with precision the evidence that is subject to the proposed order and the limitation or exclusion placed on the evidence. The motions and responses must be concise and must not exceed five (5) pages in length. Counsel shall be prepared to argue the merits of such motions at the Final Pretrial Conference.

2. Proposed jury instructions shall be filed 30 days before trial.  This includes: one joint set of stipulated preliminary instructions, one joint set of stipulated mid-trial (if any) instructions, one joint set of stipulated final instructions, and one joint set of opposed instructions.

3. Proposed jury verdict forms, proposed questions for voir dire, final witness lists, and final exhibits lists shall also be filed 30 days before trial.

## XIV.  PROBABLE LENGTH OF TRIAL

Each party shall identify the estimated length of time it will take to present its case.

## XV.  ADDITIONAL INFORMATION THAT MAY BE HELPFUL TO THE COURT

Any other information that may be helpful to the Court.

## XVI.  CERTIFICATION

Undersigned counsel for each of the parties in this action do hereby approve and certify:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit listed herein: (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4. All other form and content of this Joint Proposed Pretrial Order.

**XVII. ADOPTION**

The Court may adopt this Joint Proposed Pretrial Order at a subsequent hearing. Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order the Court may, in order to prevent manifest injustice or for good cause shown, at the trial or prior thereto upon application of counsel for either party, made in good faith, or upon the motion of the Court, modify the Jury Trial Scheduling Order upon such conditions as the Court may deem just and proper.  The parties are advised the Court will not allow the parties to offer any exhibit, witness, or other evidence that was not disclosed in accordance with the Scheduling Order and the Federal Rules of Civil Procedure and listed in the Joint Proposed Final Pretrial Order, except to prevent manifest injustice.

_____          _____

Attorney for Plaintiff                    Attorney for Defendant